## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOANNA WILSON, as Independent Administrator
of the Estate of Areon J. Marion, Deceased

           Plaintiff,

      vs.

COOK COUNTY, ILLINOIS, et al.,

          Defendants.

Case No.: 22-cv-6886

Honorable Andrea R. Wood

JURY TRIAL DEMANDED

### DEFENDANTS COOK COUNTY SHERIFF DART AND OFFICER B. VARGAS ANSWER TO PLAINTIFF'S COMPLAINT AT LAW

Defendants, COOK COUNTY SHERIFF ("Defendant Sheriff Dart") and OFFICER B. VARGAS ("DEFENDANT VARGAS") (collectively "Defendants"), by their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney ANTONIO LEE, submit the following answer to the Complaint of Plaintiff JOANNA WILSON'S, ESTATE OF AREON MARION, ("Plaintiff") as follows:

### INTRODUCTION

1.      This is an action for damages brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq., the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Areon J. Marion ("Marion"), Deceased, as secured by the United States Constitution and under the laws of the State of Illinois.

**Answer: Defendants admit the above-captioned case asserts allegations pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq., the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983. Defendants deny the remaining allegations asserted in Paragraph 1.**

### PARTIES

2.      Marion died at the age of twenty-two (22) on or about October 31, 2021, following his

1

incarceration as a detainee in the Cook County Department of Corrections ("CCDOC") in Chicago, Illinois. At all relevant times prior to his death, Marion was a citizen of the United States and resided within the jurisdiction of this Court.

**Answer: Defendants admit Areon J. Marion (hereinafter "Marion") was a pretrial detainee that died at the age of twenty-two (22) on October 31, 2021. Defendants admit venue is proper and the Court has jurisdiction. Defendants deny remaining allegations asserted in Paragraph 2.**

3. At all relevant times, Joanna Wilson ("Wilson") was the mother of Marion, now deceased, was and is now a citizen of the United States and resides within the State of Arizona.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 3.**

4. On September 23, 2022, by order of the Circuit Court of Cook County, Wilson was lawfully appointed Independent Administrator of the Estate of Areon J. Marion, Deceased, for the purpose of prosecuting any and all causes of action accruing as a result of the injuries and death of Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 4.**

5. At all relevant times, Cook County, Illinois ("Cook County"), was and is a unit of local government duly incorporated under the laws of the State of Illinois.

**Answer: Defendants admit Cook County was and is municipal corporation, and state that the County of Cook is a body politic and corporate under Illinois law.**

6. Cook County is responsible under respondeat superior for the conduct of its employees and agents.

**Answer: Defendants deny the allegations asserted in Paragraph 6.**

7. At all relevant times, Cook County through the Cook County Health and Hospitals System ("CCHHS") and its various facilities, including Cermak Health Services of Cook County ("Cermak Health Services"), provided medical services. Specifically, Cook County owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services,

which was and is a medical facility serving the detainees in CCDOC, and provided medical services to patients therein.

**Answer: Defendants admit Cook County provides medical services through Cook County Health and Hospitals System ("CCHHS"), including detainees at the Cook County Department of Corrections. Defendants deny the remaining allegations asserted in Paragraph 7.**

8.      At all relevant times, Yaser Haq, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Haq was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 8.**

9.      At all relevant times, Steve Paschos, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Paschos was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 9.**

10.      At all relevant times, Michael Bednarz, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Bednarz was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 10.**

11.      At all relevant times, Ahleah C. Balawender PA-C, is and was an employee of Cook County and a licensed physician in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Balawender was engaged in the complained of conduct while

acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 11.**

12.     At all relevant times, Jason Sprague, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Sprague was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 12.**

13.     At all relevant times, Lauren Cartwright, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Cartwright was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 13.**

14.     At all relevant times, Nikki Ruffin, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Ruffin was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 14.**

15.     At all relevant times, the Cook County Sheriff ("the Sheriff'), served as the elected Sheriff of Cook County. The Sheriff is and was the warden of CCDOC and was responsible for the operations, policies, and/or management of CCDOC.

**Answer: Defendants admit Cook County Sheriff Dart is the duly elected and authorized Sheriff of Cook County, and responsible for the operations and policies of the Cook County**

Department of Corrections. Defendants deny the remaining allegations asserted in Paragraph 15.

16.     At all relevant times, the Sheriff agreed to work collaboratively with Cook County d/b/a CCHHS and Cermak Health Services in providing medical care to detainees in CCDOC. The Sheriff is being sued in its official capacity. The Sheriff is responsible under respondeat superior for the conduct of its employees and agents for all state claims.

**Answer: Defendant Sheriff Dart admits CCHS and Cermak Health Services provide medical care to detainees in CCDOC. Defendant Sheriff Dart admits he is sued only in his official capacity. Defendants deny the remaining allegations asserted in Paragraph 16.**

17.     At all relevant times, Officer B. Vargas 16976 ("Vargas"), is and was an employee of the Sheriff. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Vargas was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendant Vargas admits he is sued only in his individual capacity. Defendants deny the remaining allegations asserted in Paragraph 17.**

18.     At all relevant times, Cook County is the indemnitor of any judgment against Cook County, the Sheriff, or their employees and/or agents for compensatory damages and attorneys' fees and costs. Accordingly, Cook County is also named as indemnitor to this action in addition to its previously identified capacity.

**Answer: Defendants admit the allegations asserted in Paragraph 18.**

## FACTUAL BACKGROUND

19.     Following his arrest for aggravated battery, Marion was remanded to the custody of the CCDOC on June 1, 2021.

**Answer: Defendants admit Marion was booked in Cook County Jail on June 1, 2021. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 19.**

20.     Throughout his time in CCDOC starting on June 1, 2021, until his death on October 31,

2021, Marion presented with obvious signs of ongoing psychiatric crisis, including incidents on June 1, 2021 and June 2, 2021 where Marion was aggressive and hostile toward correctional staff.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 20.**

21.     On June 3, 2021, following his mental health assessment, Marion was assigned to acute/subacute psychiatric treatment in Cermak Health Services Psychiatric Special Care Units ("PSCU"). Marion's treatment inside PSCU was targeted to address Marion's acute psychiatric symptoms. Marion remained housed in PSCU from June 3, 2021 until August 26, 2021.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Marion's medical care and treatment. Defendants deny the remaining allegations asserted in Paragraph 21.**

22.     At all relevant times herein, PSCU provided 24-hour medical and mental health care to pretrial detainees including structured support to reduce symptoms and prevent harm to self and others. PSCU was staffed with nursing and mental health staff on a 24-hour basis. PSCU provided a therapeutic environment with suicide resistant cells and access to therapeutic seclusion and restraint. PSCU also provided daily psychiatric follow-up care. Pretrial detainees housed in PSCU were exempt from discipline inside CCDOC.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 22.**

23.     On June 4, 2021, Andrew Greiner PA-C examined Marion and noted signs of delusion, paranoia, and hostility.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 23.**

24.     On June 8, 2021, Ahleah C. Balawender PA-C diagnosed Marion with Differential Psychosis and prescribed Marion with anti-psychotropic medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth**

of the allegations asserted in Paragraph 24.

25.     On June 14, 2021, Marion refused his psychotropic medications and continued to experience delusions and grandiose ideas.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 25.**

26.     On June 16, 2021, Ahleah C. Balawender PA-C contacted Marion's mother, Plaintiff Joanna Wilson. According to Marion's medical chart, Plaintiff advised PA Balawender that in 2020, Marion traveled from his home in Arizona to Chicago to visit with friends. Plaintiff further reported that, during this visit, Marion was arrested by the Chicago Police Department, and as a result, Marion was hospitalized at Northwestern Memorial Hospital for five (5) days and treated with psychotropic medication. Plaintiff advised that she was concerned about the side effects of Marion's medication. Plaintiff also advised that after Marion returned home to Arizona in August 2020, Marion displayed bizarre behavior including talking to the devil and complaining that people were chasing him.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 26.**

27.     Despite actual knowledge of Marion's persistent psychosis, PA Balawender, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. PA Balawender never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 27.**

28.     On June 21, 2021, Dr. Yaser Haq, M.D. diagnosed Marion with Differential Psychosis. Dr. Haq prescribed anti-psychotic medication and ordered Marion to be placed in a psychiatric unit in PSCU with safety (well-being) checks conducted every fifteen (15) minutes for unpredictable behavior.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 28.**

29. On June 29, 2021, a petition for involuntary medication was filed because of Marion's refusal to take his medications; however, this petition was later withdrawn because Marion apparently improved in compliance with his medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 29.**

30. On August 25, 2021, Dr. Yaser Haq, M.D. evaluated Marion and noted that Marion was no longer on any medications despite his well-documented history of psychosis and earlier prescriptions of psychotropic medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 30.**

31. Despite actual knowledge of Marion's persistent psychosis, Dr. Haq, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Dr. Haq never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 31.**

32. On August 26, 2021, despite Marion's known psychiatric crisis, Marion was transferred from PSCU to super-maximum security in Division 9 for disciplinary reasons related to those incidents toward correctional staff on June 1, 2021 and June 2, 2021 when Marion first arrived in CCDOC. Marion was housed in Division 9 from August 26, 2021 until October 7, 2021. Marion would later be returned to Division 9 on October 29, 2021, where he remained until his death on October 31, 2021.

**Answer: Defendants admit Marion was housed in Division 9 from August 26, 2021 to October**

**7, 2021, and October 29, 2021 to October 31, 2021. Defendants admit Marion received disciplinary citations for assaulting staff on June 1, 2021 and June 2, 2021. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Marion's medical care and treatment. Defendants deny the remaining allegations asserted in Paragraph 32.**

33.     Division 9 is a super-maximum security housing facility located inside CCDOC. Substantially less medical and mental health care is provided in Division 9 than that which is provided in PSCU. For example, nursing care is only provided during medical rounds and mental health care is only provided as needed in Division 9 rather than 24-hour nursing and mental health care provided in PSCU. Significantly, unlike PSCU, a therapeutic environment with suicide resistant cells or access to therapeutic seclusion and restraint is not provided in Division 9.

**Answer: Defendants deny the allegations asserted in Paragraph 33.**

34.     On September 29, 2021, Dr. Steve Paschos examined Marion after Marion smeared feces inside his jail cell in Division 9. Dr. Paschos noted that Marion had a past psychiatric history of psychosis with bipolar disorder and possible schizoaffective disorder. During this visit, Marion stated "Well I think I should back to [PSCU psychiatric care.] I'm suffering here I can't be in that cell so I'll keep smearing feces." Dr. Paschos confirmed the diagnosis of Differential Psychosis and documented that he would consider transferring Marion back to PSCU on a long-term basis. Dr. Paschos did not immediately return Marion back to PSCU. Dr. Paschos never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion. ' '

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 34.**

35.     Despite actual knowledge of Marion's persistent psychosis, Dr. Paschos, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth**

of the allegations asserted in Paragraph 35.

36.    On October 6, 2021, while in Division 9 of the CCDOC, Marion was seen by a mental health specialist where Marion reported suicidal ideations with a clear plan of execution.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 36.**

37.    On October 7, 2021, Marion was returned to a psychiatric unit in PSCU for further evaluation after Marion reported suicidal ideations.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 37.**

38.    On October 19, 2021, Marion completed a Health Service Request Form where Marion requested a psychological evaluation because of his desire to kill his cellmate and himself.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 38.**

39.    On October 20, 2021, Marion was placed in acute care for psychological evaluation in PSCU.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 39.**

40.    On October 26, 2021, Marion was seen by Jason Sprague, who cleared Marion to return to Division 9.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 40.**

41.    Despite actual knowledge of Marion's persistent psychosis, Mr. Sprague, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Mr. Sprague never evaluated the efficacy of the administration and dosage of these medications or identified

contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 41.**

42.     On October 29, 2021, Marion was transferred back to super-maximum security at Division 9.

**Answer: Defendants admit Marion was present in Division 9, Tier 1F, on October 29, 2021. Defendants deny the remaining allegations asserted in Paragraph 42.**

43.     Later that same day after being returned to Division 9, Lauren Cartwright saw Marion pursuant to a non-emergency health phone request form where Marion stated: "everything inside me by doing things illegal." During treatment of Marion, Ms. Cartwright learned that Marion had been refusing psychotropic medication since October 22, 2021. Moreover, Marion indicated that he wanted to hurt himself. Ms. Cartwright prescribed a treatment plan to provide observation and follow-up care. Ms. Cartwright never recommended that Marion be transferred back to PSCU for acute psychiatric care.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 43.**

44.     Despite actual knowledge of Marion's persistent psychosis, Ms. Cartwright, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Cartwright never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 44.**

45.     Afterwards, on October 29, 2021, Nikki Ruffin also saw Marion where, after review of Marion's clinical chart and despite Marion's obvious psychiatric crisis, Ms. Ruffin indicated that there was "nothing relevant to indicate that [Marion] should not currently be placed in [Division 9] housing." Ms.

Ruffin prescribed a treatment plan to provide observation and follow-up care. Ms. Ruffin never recommended that Marion be transferred back to PSCU for acute psychiatric care.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 45.**

46.     Despite actual knowledge of Marion's persistent psychosis, Ms. Ruffin, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Ruffin never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 46.**

47.     October 31, 2021, Defendant Vargas was assigned to security of Marion's living unit in Division 9. During his shift, Defendant Vargas worked alone and was required to conduct periodic safety checks of the detainees in this living unit every thirty (30) minutes to ensure the health and safety of the detainees.

**Answer: Defendant Vargas admits to being the tier officer for Tier 1F in Division 9 on October 31, 2021. Defendants admit officers are required to conduct periodic safety checks on detainees generally every thirty (30) minutes. Defendants deny the remaining allegations asserted in Paragraph 47.**

48.     On October 31, 2021, Defendant Vargas left his post unattended without requesting backup to keep watch of the tier and did not perform a safety check of the living unit despite actual knowledge that the detainees, including Marion, had acute psychiatric concerns that included risks of self-harm such as suicide.

**Answer: Defendant Vargas admits to briefly leaving Tier 1F on October 31, 2021. Defendants deny the allegations asserted in Paragraph 48.**

49.     While Vargas was away from his post at Marion's living unit, Marion hung himself to death.

**Answer: Defendants admit Defendant Vargas was not present on Tier 1F when Marion committed suicide by hanging himself. Defendants deny the remaining allegations asserted in Paragraph 49.**

### *MONELL* ALLEGATIONS AGAINST COOK COUNTY AND THE SHERIFF

50.     Marion's death was caused by the customs, practices, policies, or decisions of policy-making officials for Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff.

**Answer: Defendants deny the allegations asserted in Paragraph 50.**

51.     By way of background, on July 11, 2008, the United States Department of Justice, pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, issued its letter of findings ("DOJ Letter of Findings") to Cook County and the Sheriff regarding various conditions at CCDOC.

**Answer: Defendants admit the allegations asserted in Paragraph 51.**

52.     The DOJ Letter of Findings documented widespread practices, customs, policies, and decisions of policy-making officials which demonstrated deliberate indifference to the adequacy or constitutionality of the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants do not dispute that the United States Department of Justice ("DOJ") investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 52.**

53.     Specifically, the DOJ Letter of Findings documented systematic deficiencies in the mental health care at CCDOC.

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 53.**

54.     The DOJ Letter of Findings memorialized several notable examples where Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff staff failed "to address the specific needs of inmates with mental illness, including "(l) failure to timely and appropriately evaluate inmates for

treatment; (2) inadequate assessment and treatment; (3) inadequate psychotherapeutic medication administration; and (4) inadequate suicide prevention."

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 54.**

55.    The DOJ Letter of Findings found that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff failed to comport with generally accepted professional standards of correctional mental health care.

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 55.**

56.    Moreover, the DOJ Letter of Findings memorialized several examples where staff of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "failed to provide adequate care to inmates with serious medical needs that require monitoring and follow-up medical care." The DOJ stated that according to appropriate correctional medical care standards, "[i]nmates who suffer from chronic medical illnesses must be regularly monitored by medical professionals to prevent the progression of their illnesses. Monitoring should occur on a regular basis to ensure that symptoms are under control and that medications are appropriate based on generally accepted correctional medical standards. However, [the DOJ] found that [CCDOC] was deficient in ensuring that patients are seen on a regular basis... and that inmates are monitored and treated to prevent the progression of illnesses."

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 56.**

57.    The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "provide adequate care for inmates with self-injurious behavior." Additionally, the  DOJ recommended that staff should "ensure that administrative segregation and observation status are not used to punish inmates for symptoms of mental illness and behaviors that are, because of mental illness, beyond their control."

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings**

on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 57.

58.     The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff provide adequate staffing, training, and supervision of medical and correctional staff necessary to ensure adequate medical care is provided.

**Answer: Defendants do not dispute that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants deny the remaining allegations asserted in Paragraph 58.**

59.     After the DOJ Letter of Findings, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered a consent decree ("Agreed Order") on May 13, 2010, in the matter of United States v. Cook County, et al., case number 10-cv-2946, pending in the United States District Court for the Northern District of Illinois.

**Answer: Defendants admit a consent decree was entered in the matter of *United States v. Cook County, et al.*, Case No. 10-cv-02946. Defendants deny the remaining allegations asserted in Paragraph 59.**

60.     As a result of this Agreed Order, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered an Inter-Agency Agreement for mutual responsibilities in providing health care, including mental health care, to detainees at the CCDOC.

**Answer: Defendant Sheriff Dart admits the existence of an Inter-Agency Agreement between Cook County and the Cook County Sheriff's Office. Defendant Vargas lacks knowledge about the Inter-Agency Agreement. Defendants deny the remaining allegations asserted in Paragraph 60.**

61.     Because of the Agreed Order and all times thereafter, Cook County _d/b/a CCHHS and Cermak Health Services and the Sheriff acknowledged their mutual obligation to ensure that all inmates received adequate, timely, and prompt access to mental health care and follow-up mental health care.

**Answer: Defendant Sheriff Dart acknowledges all duties and responsibilities imposed by law. Defendants deny the remaining allegations asserted in Paragraph 61.**

62.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the

15

Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, repeatedly disregarded the obvious psychiatric crisis experienced by Marion by failing to initiate and maintain mental health interventions.

**Answer: Defendants deny the allegations asserted in Paragraph 62.**

63.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that necessary interventions were provided for detainees presenting with psychiatric crisis.

**Answer: Defendants deny the allegations asserted in Paragraph 63.**

64.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, transferred Marion to a super-maximum security housing unit without suicide resistant interventions.

**Answer: Defendants deny the allegations asserted in Paragraph 64.**

65.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that staff provided adequate and timely acute care and follow-up care to detainees with mental health issues, including Marion, causing the plainly obvious consequence of harm to Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 65.**

66.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to properly maintain adequate staffing levels to ensure that safety (well-being) checks would be performed for those detainees with obvious psychiatric illness, including Marion, who hung himself while

the correctional officer left his post.

**Answer: Defendants deny the allegations asserted in Paragraph 66.**

67.     As a result of the widespread practice or custom, express policy, or decision by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, Marion suffered harm and death.

**Answer: Defendants deny the allegations asserted in Paragraph 67.**

<u>COUNT I</u>

<u>42 U.S.C. § 1983 - WRONGFUL DEATH ACT</u>
<u>COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES</u>

68.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 68 of Count I.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 68 of Count I.**

69.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 68.**

70.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 70.**

71.     Defendant was aware that Marion had a serious medical need.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 71.**

72.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 72.**

73.     As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his mental illness.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 73.**

74.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 74.**

75.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

**Answer: Count I, which includes Paragraphs 68 through 75 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 75.**

**COUNT II**
**42 U.S.C. § 1983 - WRONGFUL DEATH ACT COOK COUNTY SHERIFF**

76.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 76 of Count II.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 76 of Count II.**

77.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Sheriff Dart admits the allegations asserted in Paragraph 77. Count II, which includes Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas admits the allegations asserted in Paragraph 77.**

78.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 78. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 78.**

79.     Defendant[*sic*] was aware that Marion had a serious medical need.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 79. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 79.**

80.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment

for the substantial risks to Marion's health.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 80. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 80.**

81.     As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 81. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 81.**

82.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 82. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 82.**

83.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 83. Paragraphs 77 through 83 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 83.**

<u>**COUNT III**</u>
<u>**42 U.S.C. § 1983 - SURVIVAL ACT**</u>
<u>**COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES**</u>

84.     Plaintiff reasserts and realleges the allegations contained in paragraphs I through 67 as fully set forth herein in paragraph 84 of Count III.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 84 of Count III.**

85.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 85.**

86.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 86.**

87.     Defendant was aware that Marion had a serious medical need.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 87.**

88.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 88.**

89.     As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 89.**

90.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 90.**

91.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 91.**

92.     As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Count III, which includes Paragraphs 84 through 92 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 92.**

### COUNT IV
### 42 U.S.C. § 1983 - SURVIVAL ACT
### COOK COUNTY SHERIFF

93.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 93 of Count N.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1**

through 67 of the Complaint as fully set forth herein in Paragraphs 93 of Count IV.

94.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Sheriff Dart admits the allegations asserted in Paragraph 94. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas admits the allegations asserted in Paragraph 94.**

95.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 95. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 95.**

96.     Defendant was aware that Marion had a serious medical need.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 96. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 96.**

97.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 97. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To**

the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 97.

98.     As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 98. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 98.**

99.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 99. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 99.**

100.    Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 100. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 100.**

101.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 101. Count IV, which includes Paragraphs 93 through 101 hereinafter, is not asserted against Defendant Vargas. To**

the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 101.

**COUNT V**
**42 U.S.C. § 1983 – WRONGFUL DEATH ACT**
**YASER HAQ, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**NIKKI RUFFIN, AND OFFICER B. VARGAS 16976**

102.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 102 of Count V.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 102 of Count V.**

103.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 103. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 103.**

104.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 104. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph**

25

**104.**

105.    Defendants were aware that Marion had a serious medical need.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 105. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies allegations asserted in Paragraph 105.**

106.    Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 106. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 106.**

107.    As a result of the acts and omissions of Defendants, Marion suffered harm caused by Defendants' deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 107. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 107.**

108.    At all relevant times, Defendants acted under color of law.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 108. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 108.**

109.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 109. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 109.**

110.     Marion's death was the result of Defendants' deliberate indifference.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 110. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 110.**

111.     Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 111. Count V, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 111.**

## COUNT VI
## 42 U.S.C. § - SURVIVAL ACT
### YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, <u>NIKKI RUFFIN, AND OFFICER VARGAS 16976</u>

112.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 112 of Count VI.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 112 of Count VI.**

113.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 113. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 113.**

114.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 114. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 114.**

115.     Defendants were aware that Marion had a serious medical need.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 115. Count VI, which includes Paragraphs 102 through 111 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 115.**

116.     Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial

risks to Marion's health.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 116. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 116.**

117.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 117. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 117.**

118.    At all relevant times, Defendants acted under color of law.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 118. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 118.**

119.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 119. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in**

Paragraph 119.

120.    Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 120. Count VI, which includes Paragraphs 112 through 120 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 120.**

**COUNT VII**
**PROFESSIONAL NEGLIGENCE – WRONGFUL DEATH ACT**
**COOK COUNTY d/b/a CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**AND NIKKI GRIFFIN**

121.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 121 of Count VII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 121 of Count VII.**

122.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services to provide medical services to patients at CCDOC.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services provide medical services to detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 122.**

123.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide

for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized actual and/or apparent agents and employees of Defendant Cook County.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services staff provide patient care. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 123.**

124.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 124.**

125.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 125.**

126.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason

Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.       failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.       mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.       failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.       failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.       failed to timely intervene to remove Marion from Division 9 in order to place Marion in psychiatric housing unit;

f.       failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.       failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.       were otherwise careless and negligent.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 126.**

127.      Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was negligent in one or more of the following ways:

a.       failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.       mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.       failed to initiate and upgrade presumptive suicide precautions to protect Marion;

     d.     failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

     e.     failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

     f.     failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

     g.     failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

     h.     were otherwise careless and negligent.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 127.**

128.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 128.**

129.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, et seq.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 129.**

130.    The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2- 622(a)(l) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by

735 ILCS 5/2-622 is attached hereto as Exhibit B.

**Answer: Count VII, which includes Paragraphs 121 through 130 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 130.**

**COUNT VIII**
**PROFESSIONAL NEGLIGENCE – SURVIVAL ACT**
**COOK COUNTY D/B/A CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**AND NIKKI RUFFIN**

131. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 131 of Count VIII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 131 of Count VIII.**

132. At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed workers to operate CCHHS and its affiliate Cermak Health Services, which was and is a medical facility serving the detainees at CCDOC, and provided medical services to patients therein.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services provide medical services to detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 132.**

133. At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized agents and/or apparent agents and employees of Defendant Cook

County.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services staff provide patient care. Defendants deny the remaining allegations asserted in Paragraph 133.**

134.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 134.**

135.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 135.**

136.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.    were otherwise careless and negligent.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 136.**

137.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was professionally negligent in the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

    f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

    g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

    h.    were otherwise careless and negligent.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 137.**

138. As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 138.**

139. Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 139.**

140. The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2- 622(a)(l) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

**Answer: Count VIII, which includes Paragraphs 131 through 140 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 140.**

## COUNT IX
## WILLFUL AND WANTON - WRONGFUL DEATH ACT COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

141.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 141 of Count IX.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 141 of Count IX.**

142.     At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendants admit employees of the Cook County Sheriff's Office work at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 142.**

143.     At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 143.**

144.     At all relevant times, the aforesaid personnel, including Officer B. Vargas 16976, were duly authorized actual and/or apparent agents and employees of Cook County or the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that Defendant Vargas was an employee of the Cook County Sheriff's Office acting within the scope of his employment during the relevant time period. Defendants deny the remaining allegations asserted in Paragraph 144.**

145.     On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 145.**

146.     At all relevant times, based on the custodial relationship, the Sheriffs agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants deny the allegations asserted in Paragraph 146.**

147.     Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, were willful and wanton in the following ways:

a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

b.      to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of other

c.     failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

d.     failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.     were otherwise willful and wanton.

**Answer: Defendants deny the allegations asserted in Paragraph 147.**

148.     As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Defendants deny the allegations asserted in Paragraph 148.**

149.     Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, et seq.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 149.**

**COUNT X**
**WILLFUL AND WANTON - SURVIVAL ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

150.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 150 of Count X.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1**

through 67 of the Complaint as fully set forth herein in Paragraphs 150 of Count X.

151.     At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendants admit employees of the Cook County Sheriff's Office work at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 151.**

152.     At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 152.**

153.     At all relevant times, the aforesaid personnel including Officer B. Vargas 16976 were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that Defendant Vargas was an employee of the Cook County Sheriff's Office acting within the scope of his employment during the relevant time period. Defendants deny the remaining allegations asserted in Paragraph 153.**

154.     On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 154.**

155.     At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants deny the allegations asserted in Paragraph 155.**

156.     Between June 1, 2021, and continuing through October 31, 2021, Defendant the Sheriff, by and through its employees and agents including Officer Vargas, was willful and wanton in the following ways:

a.     failed to take reasonable action to summon medical care where he or she knew from his

40

or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.    were otherwise willful and wanton.

**Answer: Defendants deny the allegations asserted in Paragraph 156.**

157.    As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through its agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**Answer: Defendants deny the allegations asserted in Paragraph 157.**

158.    Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 158.**

## COUNT XI
## NEGLIGENCE - WRONGFUL DEATH ACT
## COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

159.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 159 of Count XI.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 159 of Count XI.**

160.    At all relevant times, the Sheriff owned, operated, maintained, managed,

controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendant Sheriff Dart, in his official capacity, admits to employing personnel at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 160.**

161.    At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendant Dart admits to employing personnel to ensure adequate safety of detainees, including Marion, at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 161.**

162.    At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that personnel at CCOC act within the scope of their employment. Defendants deny the remaining allegations asserted in Paragraph 162.**

163.    On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 163.**

164.    At all relevant times, based on the custodial relationship, the Sheriffs agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants admit their duties to act reasonably for safety of detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 164.**

165.    Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through their employees and agents including Officer Vargas, was negligent in one or more of the following ways:

    a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

b.     failed to initiate and upgrade presumptive suicide precautions to protect Marion;

c.     failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

d.     failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

e.     were otherwise careless and negligent.

**Answer: Defendants deny the allegations asserted in Paragraph 165.**

166.    As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Defendants deny the allegations asserted in Paragraph 166.**

167.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, et seq.

**Answer: Defendants admit Plaintiff brings this lawsuit pursuant to the Wrongful Death Act. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 167.**

### COUNT XII NEGLIGENCE - SURVIVAL ACT
### COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

168.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 67 as fully set forth herein in paragraph 168 of Count XII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 168 of Count XII.**

169.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendant Sheriff Dart, in his official capacity, admits to employing personnel at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 169.**

170.     At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendant Dart admits to employing personnel to ensure adequate safety of detainees, including Marion, at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 170.**

171.     At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that personnel at CCOC act within the scope of their employment. Defendants deny the remaining allegations asserted in Paragraph 171.**

172.     On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 172.**

173.     At all relevant times, based on the custodial relationship, the Sheriffs agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants admit their duties to act reasonably for safety of detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 173.**

174.     Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, was negligent in one or more of the following ways:

    a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

    b.     failed to initiate and upgrade presumptive suicide precautions to protect Marion;

    c.     failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

    d.      failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

    e.      were otherwise careless and negligent.

**Answer: Defendants deny the allegations asserted in Paragraph 174.**

175.    As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through their agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**Answer: Defendants deny the allegations asserted in Paragraph 175.**

176.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Defendants admit Plaintiff brings this action, in part, pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 176.**

### COUNT XIII INDEMNIFICATION CLAIM - COOK COUNTY

177.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 176 as fully set forth herein in paragraph 177 of Count XIII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 67 of the Complaint as fully set forth herein in Paragraphs 177 of Count XIII.**

178.    Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/5-1106, and 55 ILCS 5/3-6016, Cook County is empowered and directed to pay any judgment for compensatory damages and any associated attorneys' fees and costs for which Cook County, the Sheriff, and/or their agents or employees, acting within the scope of his or her employment, are found liable.

**Answer: Defendants admit the allegations asserted in Paragraph 178.**

179    The acts and/or omissions of all Defendants were committed within the scope of their

employment.

**Answer: Defendants deny the allegations asserted in Paragraph 179.**

180.     If a judgment for compensatory damages and attorneys' fees and costs is entered against any Defendant, Cook County must pay the judgment as well as the associated attorneys' fees and costs.

**Answer: Defendants admit the allegations asserted in Paragraph 180.**

## AFFIRMATIVE DEFENSES

Further answering Plaintiff's Complaint, Defendants allege the following separate affirmative defenses against Plaintiff.

## I.
## Qualified Immunity

1.     With respect to the Plaintiff's claims, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART, in their individual capacities, did not cause the deprivation of any constitutional rights of Marion.

2.     The conduct of Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART were at all times objectively reasonable and did not violate any of Marion's clearly established Constitutional rights.

3.     Accordingly, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART, in their individual capacities, are entitled to the defense of qualified immunity.

## II.
## Failure to Mitigate

4.     To the extent it is revealed that Marion failed to take reasonable measures to mitigate his alleged injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

5.     Defendants reserve the right to amend the affirmative defenses at any point throughout the course of discovery.

### III.
### Tort Immunity Act

6.    Plaintiff claims a violation of Illinois state laws in the Complaint at Law.

7.    On or before October 31, 2021, there were in full force statutes commonly known as "Tort Immunities," which provide as follows:

8.    <u>745 ILCS 10/4-105</u>:

"Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners."

9.    <u>745 ILCS 10/4-103</u>:

"Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners."

10.   <u>745 ILCS 10/2-201</u>:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

11.   <u>745 ILCS 10/2-109</u>:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

12.   Each of the Tort Immunities herein noted, as well as numerous other Tort Immunities, apply to local public entities, and public employees, including Defendants, and

therefore provide immunity for all claims/allegations alleged in Plaintiff's Complaint.

13.     Pursuant to the Tort Immunities specifically quoted herein and all the Tort Immunities in the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, Defendants are immune from liability and Plaintiff's claims are barred from recovering any sum whatsoever from Defendants. *Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998).

## IV.
## Immunity from Punitive Damages

14.     To the extent Plaintiff seeks punitive damages from Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART in their official capacities, Defendants assert immunity from same.

15.     First, an official capacity suit is tantamount to a claim against the government entity itself. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

16.     Second, a municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

17.     Thus, in their official capacities, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART are immune from punitive damages.

## JURY DEMAND

With regard to any issue that may be appropriately heard by a jury in this cause of action, Defendants hereby demand a jury trial.

WHEREFORE, Defendants respectfully requests this Honorable Court enter judgment in their favor, against Plaintiff, and for any further relief the Court finds necessary and just.

**Dated: February 27, 2023.**

**Respectfully Submitted,**

KIMBERLY M. FOXX
State's Attorney of Cook County

By:    */s/ Antonio Lee*_____
Antonio Lee
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5439
Antonio.lee@cookcountyil.gov