**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNA WILSON, as Independent Administrator of the Estate of AREON J. MARION, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 22-cv-06886 |
| COOK COUNTY, ILLINOIS, a unit of local government and d/b/a COOK COUNTY HEALTH AND HOSPITALS SYSTEM and CERMAK HEALTH SERVICES OF COOK COUNTY, YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, NIKKI RUFFIN, COOK COUNTY SHERIFF, AND OFFICER B. VARGAS 16976, | ) ) ) ) ) ) ) ) ) ) | Hon. Andrea R. Wood  *Plaintiff Demands Trial by Jury* |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon J. Marion, Deceased, by her attorneys, Clifford Law Offices, P.C., brings this action against Defendants, Cook County, Illinois, a unit of local government and d/b/a Cook County Health and Hospitals System and Cermak Health Services of Cook County, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, Cook County Sheriff, and Officer B. Vargas 16976, and complains of each of them as follows:

## INTRODUCTION

1. This is an action for damages brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Areon J. Marion ("Marion"), Deceased, as secured by the United States Constitution and under the laws of the State of Illinois.

1

## PARTIES

2.      Marion died at the age of twenty-two (22) on or about October 31, 2021, following his incarceration as a detainee in the Cook County Department of Corrections ("CCDOC") in Chicago, Illinois. At all relevant times prior to his death, Marion was a citizen of the United States and resided within the jurisdiction of this Court.

3.      At all relevant times, Joanna Wilson ("Wilson") was the mother of Marion, now deceased, was and is now a citizen of the United States and resides within the State of Arizona.

4.      On September 23, 2022, by order of the Circuit Court of Cook County, Wilson was lawfully appointed Independent Administrator of the Estate of Areon J. Marion, Deceased, for the purpose of prosecuting any and all causes of action accruing as a result of the injuries and death of Marion.

5.      At all relevant times, Cook County, Illinois ("Cook County"), was and is a unit of local government duly incorporated under the laws of the State of Illinois.

6.      Cook County is responsible under *respondeat superior* for the conduct of its employees and agents.

7.      At all relevant times, Cook County through the Cook County Health and Hospitals System ("CCHHS") and its various facilities, including Cermak Health Services of Cook County ("Cermak Health Services"), provided medical services. Specifically, Cook County owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services, which was and is a medical facility serving the detainees in CCDOC, and provided medical services to patients therein.

8.      At all relevant times, Yaser Haq, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Haq was engaged in the

complained of conduct while acting within the scope of his employment and under color of state law.

9.     At all relevant times, Steve Paschos, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Paschos was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

10.     At all relevant times, Michael Bednarz, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Bednarz was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

11.     At all relevant times, Ahleah C. Balawender PA-C, is and was an employee of Cook County and a licensed physician in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Balawender was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

12.     At all relevant times, Jason Sprague, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Sprague was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

13.     At all relevant times, Lauren Cartwright, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Cartwright was

3

engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

14.     At all relevant times, Nikki Ruffin, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Ruffin was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

15.     At all relevant times, the Cook County Sheriff ("the Sheriff"), served as the elected Sheriff of Cook County. The Sheriff is and was the warden of CCDOC and was responsible for the operations, policies, and/or management of CCDOC.

16.     At all relevant times, the Sheriff agreed to work collaboratively with Cook County d/b/a CCHHS and Cermak Health Services in providing medical care to detainees in CCDOC. The Sheriff is being sued in its official capacity. The Sheriff is responsible under *respondeat superior* for the conduct of its employees and agents for all state claims.

17.     At all relevant times, Officer B. Vargas 16976 ("Vargas"), is and was an employee of the Sheriff. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Vargas was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

18.     At all relevant times, Cook County is the indemnitor of any judgment against Cook County, the Sheriff, or their employees and/or agents for compensatory damages and attorneys' fees and costs. Accordingly, Cook County is also named as indemnitor to this action in addition to its previously identified capacity.

## FACTUAL BACKGROUND

19.     Following his arrest for aggravated battery, Marion was remanded to the custody of the CCDOC on June 1, 2021.

4

20. Throughout his time in CCDOC starting on June 1, 2021, until his death on October 31, 2021, Marion presented with obvious signs of ongoing psychiatric crisis, including incidents on June 1, 2021 and June 2, 2021 where Marion was aggressive and hostile toward correctional staff.

21. On June 3, 2021, following his mental health assessment, Marion was assigned to acute/subacute psychiatric treatment in Cermak Health Services Psychiatric Special Care Units ("PSCU"). Marion's treatment inside PSCU was targeted to address Marion's acute psychiatric symptoms. Marion remained housed in PSCU from June 3, 2021 until August 26, 2021.

22. At all relevant times herein, PSCU provided 24-hour medical and mental health care to pretrial detainees including structured support to reduce symptoms and prevent harm to self and others. PSCU was staffed with nursing and mental health staff on a 24-hour basis. PSCU provided a therapeutic environment with suicide resistant cells and access to therapeutic seclusion and restraint. PSCU also provided daily psychiatric follow-up care. Pretrial detainees housed in PSCU were exempt from discipline inside CCDOC.

23. On June 4, 2021, Andrew Greiner PA-C examined Marion and noted signs of delusion, paranoia, and hostility.

24. On June 8, 2021, Ahleah C. Balawender PA-C diagnosed Marion with Differential Psychosis and prescribed Marion with anti-psychotropic medications.

25. On June 14, 2021, Marion refused his psychotropic medications and continued to experience delusions and grandiose ideas.

26. On June 16, 2021, Ahleah C. Balawender PA-C contacted Marion's mother, Plaintiff Joanna Wilson. According to Marion's medical chart, Plaintiff advised PA Balawender that in 2020, Marion traveled from his home in Arizona to Chicago to visit with friends. Plaintiff further reported that, during this visit, Marion was arrested by the Chicago

Police Department, and as a result, Marion was hospitalized at Northwestern Memorial Hospital for five (5) days and treated with psychotropic medication. Plaintiff advised that she was concerned about the side effects of Marion's medication. Plaintiff also advised that after Marion returned home to Arizona in August 2020, Marion displayed bizarre behavior including talking to the devil and complaining that people were chasing him.

27.     Despite actual knowledge of Marion's persistent psychosis, PA Balawender, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. PA Balawender never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

28.     On June 19, 2021, Dr. Michael Bednarz, M.D. attempted to evaluate Marion in the mental health psychiatry infirmary; however, Marion refused to come to the cell door for an interview. Dr. Bednarz documented that he and staff "will continue close observation" of Marion.

29.     On June 21, 2021, Dr. Yaser Haq, M.D. diagnosed Marion with Differential Psychosis.  Dr. Haq prescribed anti-psychotic medication and ordered Marion to be placed in a psychiatric unit in PSCU with safety (well-being) checks conducted every fifteen (15) minutes for unpredictable behavior.

30.     On June 29, 2021, a petition for involuntary medication was filed because of Marion's refusal to take his medications; however, this petition was later withdrawn because Marion apparently improved in compliance with his medications.

31.     On August 25, 2021, Dr. Yaser Haq, M.D. evaluated Marion and noted that Marion was no longer on any medications despite his well-documented history of psychosis

and earlier prescriptions of psychotropic medications.

32.     Despite actual knowledge of Marion's persistent psychosis, Dr. Haq, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Dr. Haq never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

33.     On July 6, 2021, Marion was observed to be agitated, aggressive, acutely psychotic, and unable to de-escalate. As a result, emergency medication was administered to treat Marion.

34.     On July 9, 2021, Dr. Michael Bednarz, M.D. was informed by staff that Marion was again agitated, aggressive, and belligerent. Marion yelled threats of harm and profanity to staff, flooded his cell, and smeared feces on his cell window. Staff attempts to de-escalate Marion were unsuccessful. Dr. Bednarz ordered administration of anti-psychotic medication and sedative medication. Dr. Bednarz never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

35.     On August 26, 2021, despite Marion's known psychiatric crisis, Marion was transferred from PSCU to super-maximum security in Division 9 for disciplinary reasons related to those incidents toward correctional staff on June 1, 2021 and June 2, 2021 when Marion first arrived in CCDOC. Marion was housed in Division 9 from August 26, 2021 until October 7, 2021. Marion would later be returned to Division 9 on October 29, 2021, where he remained until his death on October 31, 2021.

36.     Division 9 is a super-maximum security housing facility located inside

CCDOC. Substantially less medical and mental health care is provided in Division 9 than that which is provided in PSCU. For example, nursing care is only provided during medical rounds and mental health care is only provided as needed in Division 9 rather than 24-hour nursing and mental health care provided in PSCU. Significantly, unlike PSCU, a therapeutic environment with suicide resistant cells or access to therapeutic seclusion and restraint is not provided in Division 9.

37.　　On September 29, 2021, Dr. Steve Paschos examined Marion after Marion smeared feces inside his jail cell in Division 9. Dr. Paschos noted that Marion had a past psychiatric history of psychosis with bipolar disorder and possible schizoaffective disorder. During this visit, Marion stated "Well I think I should back to [PSCU psychiatric care.] I'm suffering here I can't be in that cell so I'll keep smearing feces." Dr. Paschos confirmed the diagnosis of Differential Psychosis and documented that he would consider transferring Marion back to PSCU on a long-term basis. Dr. Paschos did not immediately return Marion back to PSCU. Dr. Paschos never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

38.　　Despite actual knowledge of Marion's persistent psychosis, Dr. Paschos, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

39.　　On October 6, 2021, while in Division 9 of the CCDOC, Marion was seen by a mental health specialist where Marion reported suicidal ideations with a clear plan of execution.

40.　　On October 7, 2021, Marion was returned to a psychiatric unit in PSCU for further evaluation after Marion reported suicidal ideations.

41.     On October 19, 2021, Marion completed a Health Service Request Form where Marion requested a psychological evaluation because of his desire to kill his cellmate and himself.

42.     On October 20, 2021, Marion was placed in acute care for psychological evaluation in PSCU. On that date, Dr. Michael Bednarz, M.D. conducted a clinical interview of Marion. Dr. Bednarz concluded that Marion's suicide risk was low and that Marion reached maximum benefit from an inpatient setting. Dr. Bednarz determined that it would be appropriate to transfer Marion to outpatient mental health.

43.     Despite actual knowledge of Marion's persistent psychosis, Dr. Bednarz, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

44.     On October 26, 2021, Marion was seen by Jason Sprague, who cleared Marion to return to Division 9.

45.     Despite actual knowledge of Marion's persistent psychosis, Mr. Sprague, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Mr. Sprague never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

46.     On October 29, 2021, Marion was transferred back to super-maximum security at Division 9.

47.     Later that same day after being returned to Division 9, Lauren Cartwright saw

Marion pursuant to a non-emergency health phone request form where Marion stated: "everything inside me by doing things illegal." During treatment of Marion, Ms. Cartwright learned that Marion had been refusing psychotropic medication since October 22, 2021. Moreover, Marion indicated that he wanted to hurt himself. Ms. Cartwright prescribed a treatment plan to provide observation and follow-up care. Ms. Cartwright never recommended that Marion be transferred back to PSCU for acute psychiatric care.

48.     Despite actual knowledge of Marion's persistent psychosis, Ms. Cartwright, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Cartwright never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

49.     Afterwards, on October 29, 2021, Nikki Ruffin also saw Marion where, after review of Marion's clinical chart and despite Marion's obvious psychiatric crisis, Ms. Ruffin indicated that there was "nothing relevant to indicate that [Marion] should not currently be placed in [Division 9] housing." Ms. Ruffin prescribed a treatment plan to provide observation and follow-up care. Ms. Ruffin never recommended that Marion be transferred back to PSCU for acute psychiatric care.

50.     Despite actual knowledge of Marion's persistent psychosis, Ms. Ruffin, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Ruffin never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other

10

adverse side effects on Marion.

51.     October 31, 2021, Defendant Vargas was assigned to security of Marion's living unit in Division 9. During his shift, Defendant Vargas worked alone and was required to conduct periodic safety checks of the detainees in this living unit every thirty (30) minutes to ensure the health and safety of the detainees.

52.     On October 31, 2021, Defendant Vargas left his post unattended without requesting backup to keep watch of the tier and did not perform a safety check of the living unit despite actual knowledge that the detainees, including Marion, had acute psychiatric concerns that included risks of self-harm such as suicide.

53.     While Vargas was away from his post at Marion's living unit, Marion hung himself to death.

### _MONELL_ ALLEGATIONS AGAINST COOK COUNTY AND THE SHERIFF

54.     Marion's death was caused by the customs, practices, policies, or decisions of policy-making officials for Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff.

55.     By way of background, on July 11, 2008, the United States Department of Justice, pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, issued its letter of findings ("DOJ Letter of Findings") to Cook County and the Sheriff regarding various conditions at CCDOC.

56.     The DOJ Letter of Findings documented widespread practices, customs, policies, and decisions of policy-making officials which demonstrated deliberate indifference to the adequacy or constitutionality of the health, safety, and medical care provided to detainees at CCDOC.

57.     Specifically, the DOJ Letter of Findings documented systematic deficiencies in the mental health care at CCDOC.

11

58.     The DOJ Letter of Findings memorialized several notable examples where Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff staff failed "to address the specific needs of inmates with mental illness, including "(1) failure to timely and appropriately evaluate inmates for treatment; (2) inadequate assessment and treatment; (3) inadequate psychotherapeutic medication administration; and (4) inadequate suicide prevention."

59.     The DOJ Letter of Findings found that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff failed to comport with generally accepted professional standards of correctional mental health care.

60.     Moreover, the DOJ Letter of Findings memorialized several examples where staff of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "failed to provide adequate care to inmates with serious medical needs that require monitoring and follow-up medical care." The DOJ stated that according to appropriate correctional medical care standards, "[i]nmates who suffer from chronic medical illnesses must be regularly monitored by medical professionals to prevent the progression of their illnesses. Monitoring should occur on a regular basis to ensure that symptoms are under control and that medications are appropriate based on generally accepted correctional medical standards. However, [the DOJ] found that [CCDOC] was deficient in ensuring that patients are seen on a regular basis…and that inmates are monitored and treated to prevent the progression of illnesses."

61.     The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "provide adequate care for inmates with self-injurious behavior." Additionally, the DOJ recommended that staff should "ensure that administrative segregation and observation status are not used to punish inmates for symptoms of mental illness and behaviors that are, because of mental illness, beyond their control."

12

62. The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff provide adequate staffing, training, and supervision of medical and correctional staff necessary to ensure adequate medical care is provided.

63. After the DOJ Letter of Findings, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered a consent decree ("Agreed Order") on May 13, 2010, in the matter of *United States v. Cook County, et al.*, case number 10-cv-2946, pending in the United States District Court for the Northern District of Illinois.

64. As a result of this Agreed Order, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered an Inter-Agency Agreement for mutual responsibilities in providing health care, including mental health care, to detainees at the CCDOC.

65. Because of the Agreed Order and all times thereafter, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff acknowledged their mutual obligation to ensure that all inmates received adequate, timely, and prompt access to mental health care and follow-up mental health care.

66. Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, repeatedly disregarded the obvious psychiatric crisis experienced by Marion by failing to initiate and maintain mental health interventions.

67. Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that necessary interventions were provided for detainees presenting with psychiatric crisis.

68.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, transferred Marion to a super-maximum security housing unit without suicide resistant interventions.

69.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that staff provided adequate and timely acute care and follow-up care to detainees with mental health issues, including Marion, causing the plainly obvious consequence of harm to Marion.

70.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to properly maintain adequate staffing levels to ensure that safety (well-being) checks would be performed for those detainees with obvious psychiatric illness, including Marion, who hung himself while the correctional officer left his post.

71.     As a result of the widespread practice or custom, express policy, or decision by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, Marion suffered harm and death.

### COUNT I
### 42 U.S.C. § 1983 - WRONGFUL DEATH ACT
### COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

72.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 72 of Count I.

14

73. Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

74. Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

75. Defendant was aware that Marion had a serious medical need.

76. As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

77. As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his mental illness.

78. As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

79. Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**COUNT II**
**42 U.S.C. § 1983 – WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF**

80.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 80 of Count II.

81.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

82.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

83.     Defendant was aware that Marion had a serious medical need.

84.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

85.     As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

86.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

87.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate

of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

## COUNT III
## 42 U.S.C. § 1983 – SURVIVAL ACT
## COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

88.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 88 of Count III.

89.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

90.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

91.     Defendant was aware that Marion had a serious medical need.

92.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

93.     As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

94.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

95. Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

96. As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

## COUNT IV
## 42 U.S.C. § 1983 – SURVIVAL ACT
## <u>COOK COUNTY SHERIFF</u>

97. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 97 of Count IV.

98. Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

99. Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

100. Defendant was aware that Marion had a serious medical need.

101. As a result of the widespread practices or customs, express policies, or

decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

102.    As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

103.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

104.    Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

105.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

### COUNT V
### 42 U.S.C. § 1983 - WRONGFUL DEATH ACT
### YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, NIKKI RUFFIN, AND OFFICER B. VARGAS 16976

106.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 106 of Count V.

19

107. Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

108. Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

109. Defendants were aware that Marion had a serious medical need.

110. Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

111. As a result of the acts and omissions of Defendants, Marion suffered harm caused by Defendants' deliberate indifference to Marion's medical needs, including his psychiatric emergency.

112. At all relevant times, Defendants acted under color of law.

113. As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

114. Marion's death was the result of Defendants' deliberate indifference.

115. Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), compensatory damages, exemplary and punitive damages,

any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

### COUNT VI
### 42 U.S.C. § 1983 - SURVIVAL ACT
### YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, NIKKI RUFFIN, AND OFFICER B. VARGAS 16976

116.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 116 of Count VI.

117.    Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

118.    Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

119.    Defendants were aware that Marion had a serious medical need.

120.    Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

121.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

122.    At all relevant times, Defendants acted under color of law.

123.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death,

including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

124.    Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), compensatory damages, exemplary and punitive damages, any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**COUNT VII**
**PROFESSIONAL NEGLIGENCE – WRONGFUL DEATH ACT**
**COOK COUNTY d/b/a CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**AND NIKKI GRIFFIN**

125.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 125 of Count VII.

126.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services to provide medical services to patients at CCDOC.

127.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized actual and/or apparent agents and employees of Defendant Cook County.

128. At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

129. Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

130. Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

  a. failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

  b. mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

  c. failed to initiate and upgrade presumptive suicide precautions to protect Marion;

  d. failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

  e. failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

  f. failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

  g. failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

> h.    were otherwise careless and negligent.

131.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was negligent in one or more of the following ways:

> a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;
>
> b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;
>
> c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;
>
> d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;
>
> e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;
>
> f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;
>
> g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or
>
> h.    were otherwise careless and negligent.

132.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries resulting in his death on October 31, 2021.

133.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

134.    The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2-622(a)(1) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate

of Areon Marion, Deceased, demands judgment against the Defendants, Cook County d/b/a CCHHS and Cermak Health Services, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin , and each of them, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**COUNT VIII**
**PROFESSIONAL NEGLIGENCE – SURVIVAL ACT**
**COOK COUNTY D/B/A CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**<u>AND NIKKI RUFFIN</u>**

135.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 135 of Count VIII.

136.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed workers to operate CCHHS and its affiliate Cermak Health Services, which was and is a medical facility serving the detainees at CCDOC, and provided medical services to patients therein.

137.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized agents and/or apparent agents and employees of Defendant Cook County.

138.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

25

139.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

140.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.    were otherwise careless and negligent.

141.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was professionally negligent in the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.      mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.      failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.      failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.      were otherwise careless and negligent.

142.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

143.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

144.    The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2-622(a)(1) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants, Cook County d/b/a CCHHS and Cermak Health Services, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki

Ruffin , and each of them, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**COUNT IX**
**WILLFUL AND WANTON - WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

145.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 145 of Count IX.

146.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

147.    At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

148.     At all relevant times, the aforesaid personnel, including Officer B. Vargas 16976, were duly authorized actual and/or apparent agents and employees of Cook County or the Sheriff acting within the scope of their employment.

149.    On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

150.    At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

151.    Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, were willful and wanton in the following ways:

> a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;
>
> b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

      c.        failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

      d.        failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

      e.        were otherwise willful and wanton.

152.    As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

153.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

## COUNT X
## WILLFUL AND WANTON - SURVIVAL ACT
## COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

154.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 154 of Count X.

155.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

156.    At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

157.     At all relevant times, the aforesaid personnel including Officer B. Vargas 16976 were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

158.     On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

159.     At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

160.     Between June 1, 2021, and continuing through October 31, 2021, Defendant the Sheriff, by and through its employees and agents including Officer Vargas, was willful and wanton in the following ways:

  a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

  b.     failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

  c.     failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

  d.     failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

  e.     were otherwise willful and wanton.

161.     As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through its agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering;

had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

162.　Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

## COUNT XI
## NEGLIGENCE – WRONGFUL DEATH ACT
## COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

163.　Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 163 of Count XI.

164.　At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

165.　At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

166.　At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

167.　On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

168.　At all relevant times, based on the custodial relationship, the Sheriff's agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

31

169. Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through their employees and agents including Officer Vargas, was negligent in one or more of the following ways:

    a. failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

    b. failed to initiate and upgrade presumptive suicide precautions to protect Marion;

    c. failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

    d. failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

    e. were otherwise careless and negligent.

170. As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

171. Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**COUNT XII**
**NEGLIGENCE – SURVIVAL ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

172. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 172 of Count XII.

173. At all relevant times, the Sheriff owned, operated, maintained, managed,

controlled, funded, staffed, and/or employed personnel at CCDOC.

174. At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

175. At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

176. On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

177. At all relevant times, based on the custodial relationship, the Sheriff's agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

178. Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, was negligent in one or more of the following ways:

     a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

     b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

     c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

     d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

     e.    were otherwise careless and negligent.

179. As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through their agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and

suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

180.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

## COUNT XIII
## INDEMNIFICATION CLAIM - COOK COUNTY

181.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 180 as fully set forth herein in paragraph 181 of Count XIII.

182.    Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/5-1106, and 55 ILCS 5/3-6016, Cook County is empowered and directed to pay any judgment for compensatory damages and any associated attorneys' fees and costs for which Cook County, the Sheriff, and/or their agents or employees, acting within the scope of his or her employment, are found liable.

183.    The acts and/or omissions of all Defendants were committed within the scope of their employment.

184.    If a judgment for compensatory damages and attorneys' fees and costs is entered against any Defendant, Cook County must pay the judgment as well as the associated attorneys' fees and costs.

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendant Cook County for indemnification of any judgment for compensatory damages and any associated attorneys' fees and costs and any relief this Court deems proper and just.

34

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

/s/ James C. Pullos
James C. Pullos

James C. Pullos
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle St., Suite 3600
Chicago, IL 60602
(312) 899-9090
jcp@cliffordlaw.com
*Attorney for Plaintiff*

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNA WILSON, as Independent Administrator | ) | |
| of the Estate of AREON J. MARION, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 22-cv-06886 |
| | ) | |
| COOK COUNTY, ILLINOIS, a unit of local government | ) | Hon. Andrea R. Wood |
| and d/b/a COOK COUNTY HEALTH AND | ) | |
| HOSPITALS SYSTEM and CERMAK HEALTH | ) | |
| SERVICES OF COOK COUNTY, YASER HAQ, M.D., | ) | |
| STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., | ) | |
| AHLEAH C. BALAWENDER PA-C, | ) | *Plaintiff Demands Trial by Jury* |
| JASON SPRAGUE, LAUREN CARTWRIGHT, | ) | |
| NIKKI RUFFIN, COOK COUNTY SHERIFF, AND | ) | |
| OFFICER B. VARGAS 16976, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ATTORNEY AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1)

JAMES C. PULLOS states as follows:

1.      I am one of the attorneys with responsibility for this matter on behalf of the Plaintiff.

2.      I have consulted and reviewed the facts of this case with a health professional whom I reasonably believe: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practice or have practiced within the last six (6) years or teach or have taught within the last six (6) years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

3.      The reviewing health professionals have determined in written reports after review of the medical records and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action against Defendants, Cook County, Illinois, d/b/a Cook County Health and Hospitals System and Cermak Health Services of Cook

County, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender

PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin.

      4.      A copy of the written report is attached.

      FURTHER AFFIANT SAYETH NAUGHT.


                                /s/ James C. Pullos
                                James C. Pullos

[X]      Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

James C. Pullos
Clifford Law Offices, P.C.
120 North LaSalle Street, 36th Floor
Chicago, Illinois 60602
(312) 899-9090
jcp@cliffordlaw.com

EXHIBIT B

March 7, 2023

James C. Pullos
Clifford Law Offices, P.C.
120 N. LaSalle, 36th Floor
Chicago, IL 60602

      **Re:**    **Joanna Wilson v. Cook County, et al.**
              **File No. 22N-0036**

Dear Mr. Pullos:

      I am a physician licensed to practice medicine in all its branches, and I am board certified in general psychiatry. I am knowledgeable in the relevant issues involved in this action. I have practiced within the last 6 years in the same area of health care that is at issue in this action and have substantial experience in the practice of psychiatry. I am qualified by experience and demonstrated competence in the subject of this case. I am a Board-Certified Psychiatrist, forensic trained and certified independent medical examiner. I have been practicing medicine in the heart of metropolitan Atlanta, Georgia for more than 20 years. I have an exuberant amount of experience in the psychiatric medical field, both inpatient and outpatient care. I am a competent expert in forensic psychiatry, based on my experience and education combined. I am currently treating patients in the outpatient and inpatient setting and well informed on the subject matters of this particular case.

      I have reviewed the medical records of Areon Marion, including the medical records from the Cook County Health and Hospitals System ("CCHHS"). The opinions stated herein are based upon a reasonable degree of medical certainty based upon my training experience and my review of the aforesaid materials.

      Following his arrest for aggravated battery, Mr. Marion was remanded to the custody of the Cook County Department of Corrections ("CCDOC") on June 1, 2021. Throughout his time in CCDOC starting on June 1, 2021 until his death on October 31, 2021, Mr. Marion presented with obvious signs of ongoing psychiatric crisis. On June 3, 2021, following his mental health screening, Mr. Marion was assigned to acute/subacute psychiatric treatment in Cermak Health Services Psychiatric Special Care Units ("PSCU"). Mr. Marion initially remained housed in PSCU from June 3, 2021 until August 26, 2021 where Mr. Marion received 24-hour medical and mental health care to pretrial detainees including structured support to reduce symptoms and prevent harm to self and others. PSCU provided a therapeutic environment with suicide resistant cells and access to therapeutic seclusion and restraint. PSCU also provided daily psychiatric follow-up care. Pretrial detainees housed in PSCU were exempt from discipline inside CCDOC.

      On June 4, 2021, Andrew Greiner PA-C examined Mr. Marion and noted signs of delusion, paranoia, and hostility. On June 8, 2021, Ahleah C. Balawender PA-C diagnosed Mr. Marion with Differential Psychosis and prescribed Mr. Marion with anti-psychotropic medications. Under his care, PA Balawender never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Mr. Marion.

      On June 14, 2021, Mr. Marion refused his psychotropic medications and continued to experience delusions and grandiose ideas. On June 16, 2021, Ahleah C. Balawender PA-C

1

contacted Mr. Marion's mother, Joanna Wilson. Ms. Wilson advised PA Balawender that in 2020, Mr. Marion traveled from his home in Arizona to Chicago to visit with friends. She further reported that, during this visit, Mr. Marion was arrested by the Chicago Police Department, and as a result, Mr. Marion was hospitalized at Northwestern Memorial Hospital for five (5) days and treated with psychotropic medication. She also expressed concern about the side effects of Mr. Marion's medication. She also indicated that after Mr. Marion returned home to Arizona in August 2020, Mr. Marion displayed bizarre behavior including talking to the devil and stating that people were chasing him. Despite actual knowledge of Mr. Marion's persistent psychosis, PA Balawender, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others.

On June 19, 2021, Dr. Michael Bednarz, M.D. attempted to evaluate Marion in the mental health psychiatry infirmary; however, Marion refused to come to the cell door for an interview. Dr. Bednarz documented that he and staff "will continue close observation" of Marion.

On June 21, 2021, Dr. Yaser Haq, M.D. diagnosed Mr. Marion with Differential Psychosis. Dr. Haq prescribed anti-psychotic medication and ordered Mr. Marion to be placed in a psychiatric unit in PSCU with safety/well-being checks every fifteen (15) minutes for unpredictable behavior. Under his care, Dr. Haq never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Mr. Marion. On June 29, 2021, a petition for involuntary medication was filed; however, this petition was later withdrawn.

On July 6, 2021, Marion was observed to be agitated, aggressive, acutely psychotic, and unable to de-escalate. As a result, emergency medication was administered to treat Marion. On July 9, 2021, Dr. Michael Bednarz, M.D. was informed by staff that Marion was again agitated, aggressive, and belligerent. Marion yelled threats of harm and profanity to staff, flooded his cell, and smeared feces on his cell window. Staff attempts to de-escalate Marion were unsuccessful. Dr. Bednarz ordered administration of anti-psychotic medication and sedative medication. Dr. Bednarz never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

On August 25, 2021, Dr. Yaser Haq, M.D. evaluated Mr. Marion and noted that Mr. Marion was no longer on any medications despite his well-documented history of psychosis. Despite actual knowledge of Mr. Marion's persistent psychosis, Dr. Haq, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others.

On August 26, 2021, Mr. Marion was transferred from PSCU to super maximum-security in Division 9 for disciplinary reasons despite Mr. Marion's known psychiatric crisis. Mr. Marion initially was housed at Division 9 from August 26, 2021 until October 7, 2021. Mr. Marion would be returned to Division 9 on October 29, 2021 where he remained until his death on October 31,

2021. Division 9 is a super maximum-security housing unit located inside CCDOC. Division 9 provides substantially less medical and mental health care than that which is provided in PSCU. For example, Division 9 does not provide 24-hour nursing and mental health staff; but rather, Division 9 provides nursing care during medical rounds and mental health care as needed. Moreover, Division 9 does not provide for a therapeutic environment with suicide resistant cells or access to therapeutic seclusion and restraint.

On September 29, 2021, Dr. Steve Paschos examined Mr. Marion after Mr. Marion smeared feces inside his jail cell. Dr. Paschos noted that Mr. Marion had a past psychiatric history of psychosis with bipolar disorder and possible schizoaffective disorder. During this visit, Mr. Marion requested to be transferred back to PSCU psychiatric care or would otherwise continue smearing feces in his cell. Dr. Paschos confirmed the diagnosis of Differential Psychosis and documented that he would consider transferring Mr. Marion back to PSCU on a long-term basis. Dr. Paschos did not immediately return Mr. Marion back to PSCU. Under his care, Dr. Paschos never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Mr. Marion. Despite actual knowledge of Mr. Marion's persistent psychosis, Dr. Paschos, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others.

On October 6, 2021, while in Division 9 of the CCDOC, Mr. Marion was seen by a mental health specialist where Mr. Marion reported suicidal ideations with a clear plan of execution. On October 7, 2021, Mr. Marion was returned to a psychiatric unit in PSCU for further evaluation after Mr. Marion reported suicidal ideations. On October 19, 2021, Mr. Marion completed a Health Service Request Form where Mr. Marion requested a psychological evaluation because of his desire to kill his cellmate and himself. On October 20, 2021, Mr. Marion was placed in acute care for psychological evaluation in PSCU.

On that date, Dr. Michael Bednarz, M.D. conducted a clinical interview of Marion. Dr. Bednarz concluded that Marion's suicide risk was low and that Marion reached maximum benefit from an inpatient setting. Dr. Bednarz determined that it would be appropriate to transfer Marion to outpatient mental health. Despite actual knowledge of Marion's persistent psychosis, Dr. Bednarz, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

On October 26, 2021, Mr. Marion was seen by Jason Sprague, who cleared Mr. Marion to return to Division 9. Despite actual knowledge of Mr. Marion's persistent psychosis, Mr. Sprague, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others. Mr. Sprague never evaluated the efficacy of the administration or dosage of Mr. Marion's medications or identified contraindications or other adverse side effects on Mr. Marion.

3

On October 29, 2021, Mr. Marion was transferred back to Division 9. Later that same day after being returned to Division 9, Ms. Cartwright saw Mr. Marion pursuant to a non-emergency health phone request form where Mr. Marion indicated that he wanted to hurt himself. During treatment of Mr. Marion, Ms. Cartwright learned that Mr. Marion had been refusing psychotropic medication since October 22, 2021. Ms. Cartwright prescribed a treatment plan to provide observation and follow-up care. Ms. Cartwright never recommended that Mr. Marion be transferred back to PSCU for acute psychological care. Ms. Cartwright never evaluated the efficacy of the administration or dosage of Mr. Marion's medications or identified contraindications or other adverse side effects on Mr. Marion. Despite actual knowledge of Mr. Marion's persistent psychosis, Ms. Cartwright, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others.

Afterwards, on October 29, 2021, Ms. Ruffin also saw Mr. Marion where Ms. Ruffin indicated that after review of Mr. Marion's clinical chart, there was nothing relevant to indicate that Mr. Marion should not be held in Division 9. Ms. Ruffin prescribed a treatment plan to provide observation and follow-up care. Ms. Ruffin never recommended that Mr. Marion be transferred back to PSCU for acute psychological care. Ms. Ruffin never evaluated the efficacy of the administration or dosage of Mr. Marion's medications or identified contraindications or other adverse side effects on Mr. Marion. Despite actual knowledge of Mr. Marion's persistent psychosis, Ms. Ruffin, with deliberate indifference to the safety of Mr. Marion, never initiated any additional mental health interventions or discussed Mr. Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Mr. Marion would be housed in an environment that prevents risks of harm to himself or others.

Based upon my review of the aforementioned materials and my training, education, and experience, I have determined there is a reasonable and meritorious cause for the filing of an action against Defendants Cook County d/b/a CCHHS and Cermak Health Services of Cook County, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin. It is my opinion that, with a reasonable degree of medical certainty, had these Defendants initiated reasonable probable suicide interventions, Areon Marion's injury could have been prevented. My opinions, based upon a reasonable degree medical certainty, are that certain acts or omissions breached the medical standard of care.

In summary, it is my opinion that between June 1, 2021 and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were professionally negligent in one or more of the following ways:

     a.     failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

     b.     mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

    c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

    d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

    e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

    f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

    g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

    h.    were otherwise careless and negligent.

In summary, it is my opinion that between June 1, 2021 and continuing through October 31, 2021, Defendants Cook County d/b/a CCHHS and Cermak Health Services of Cook County were professionally negligent in one or more of the following ways:

    a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

    b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

    c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

    d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

    e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

    f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

    g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

    h.    were otherwise careless and negligent.

As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Mr. Marion sustained injuries resulting in his death on October 31, 2021.

My opinions are subject to modification pending review of further materials.