**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOANNA WILSON, as Independent Administrator
of the Estate of AREON J. MARION, Deceased,

        Plaintiff,

    v.                                   Case No.: 22-cv-06886

COOK COUNTY, ILLINOIS, et. al.               Hon. Andrea R. Wood

        Defendants.

## DEFENDANTS COOK COUNTY SHERIFF DART'S AND OFFICER B. VARGAS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

Defendants, COOK COUNTY SHERIFF ("Defendant Sheriff Dart") and OFFICER B. VARGAS ("DEFENDANT VARGAS") (collectively "Defendants"), by their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney ANTONIO LEE, submit the following answer to the First Amended Complaint of Plaintiff JOANNA WILSON'S, ESTATE OF AREON MARION, ("Plaintiff"), Dkt. No. 18, as follows:

## INTRODUCTION

1.     This is an action for damages brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Areon J. Marion ("Marion"), Deceased, as secured by the United States Constitution and under the laws of the State of Illinois.

**Answer: Defendants admit the above-captioned case asserts allegations pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq., the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983. Defendants deny the remaining allegations asserted in Paragraph 1.**

## PARTIES

1

2.     Marion died at the age of twenty-two (22) on or about October 31, 2021, following his incarceration as a detainee in the Cook County Department of Corrections ("CCDOC") in Chicago, Illinois. At all relevant times prior to his death, Marion was a citizen of the United States and resided within the jurisdiction of this Court.

**Answer: Defendants admit Areon J. Marion (hereinafter "Marion") was a pretrial detainee that died at the age of twenty-two (22) on October 31, 2021. Defendants admit venue is proper and the Court has jurisdiction. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 2.**

3.     At all relevant times, Joanna Wilson ("Wilson") was the mother of Marion, now deceased, was and is now a citizen of the United States and resides within the State of Arizona.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 3.**

4.     On September 23, 2022, by order of the Circuit Court of Cook County, Wilson was lawfully appointed Independent Administrator of the Estate of Areon J. Marion, Deceased, for the purpose of prosecuting any and all causes of action accruing as a result of the injuries and death of Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 4.**

5.     At all relevant times, Cook County, Illinois ("Cook County"), was and is a unit of local government duly incorporated under the laws of the State of Illinois.

**Answer: Defendants admit Cook County was and is municipal corporation, and state that the County of Cook is a body politic and corporate under Illinois law.**

6.     Cook County is responsible under *respondeat superior* for the conduct of its employees and agents.

2

**Answer: Defendants deny the allegations asserted in Paragraph 6.**

7.    At all relevant times, Cook County through the Cook County Health and Hospitals System ("CCHHS") and its various facilities, including Cermak Health Services of Cook County ("Cermak Health Services"), provided medical services. Specifically, Cook County owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services, which was and is a medical facility serving the detainees in CCDOC, and provided medical services to patients therein.

**Answer: Defendants admit Cook County provides medical services through Cook County Health and Hospitals System ("CCHHS"), including detainees at the Cook County Department of Corrections. Defendants deny the remaining allegations asserted in Paragraph 7.**

8.    At all relevant times, Yaser Haq, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Haq was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 8.**

9.    At all relevant times, Steve Paschos, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Paschos was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 9.**

10.    At all relevant times, Michael Bednarz, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity.

3

At the time of the incident in this complaint, Defendant Bednarz was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 10.**

11.    At all relevant times, Ahleah C. Balawender PA-C, is and was an employee of Cook County and a licensed physician in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Balawender was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 11.**

12.    At all relevant times, Jason Sprague, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Sprague was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 12.**

13.    At all relevant times, Lauren Cartwright, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Cartwright was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 13.**

4

14.     At all relevant times, Nikki Ruffin, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Ruffin was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 14.**

15.     At all relevant times, the Cook County Sheriff ("the Sheriff"), served as the elected Sheriff of Cook County. The Sheriff is and was the warden of CCDOC and was responsible for the operations, policies, and/or management of CCDOC.

**Answer: Defendants admit Cook County Sheriff Dart is the duly elected and authorized Sheriff of Cook County, and responsible for the operations and policies of the Cook County Department of Corrections. Defendants deny the remaining allegations asserted in Paragraph 15.**

16.     At all relevant times, the Sheriff agreed to work collaboratively with Cook County d/b/a CCHHS and Cermak Health Services in providing medical care to detainees in CCDOC. The Sheriff is being sued in its official capacity. The Sheriff is responsible under *respondeat superior* for the conduct of its employees and agents for all state claims.

**Answer: Defendant Sheriff Dart admits CCHS and Cermak Health Services provide medical care to detainees in CCDOC. Defendant Sheriff Dart admits he is sued only in his official capacity. Defendants deny the remaining allegations asserted in Paragraph 16.**

17.     At all relevant times, Officer B. Vargas 16976 ("Vargas"), is and was an employee of the Sheriff. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Vargas was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**Answer: Defendant Vargas admits he is sued only in his individual capacity. Defendants deny the remaining allegations asserted in Paragraph 17.**

18.     At all relevant times, Cook County is the indemnitor of any judgment against Cook County, the Sheriff, or their employees and/or agents for compensatory damages and attorneys' fees and costs. Accordingly, Cook County is also named as indemnitor to this action in addition to its previously identified capacity.

**Answer: Defendants admit the allegations asserted in Paragraph 18.**

### FACTUAL BACKGROUND

19.     Following his arrest for aggravated battery, Marion was remanded to the custody of the CCDOC on June 1, 2021.

**Answer: Defendants admit Marion was booked in Cook County Jail on June 1, 2021. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 19.**

20.     Throughout his time in CCDOC starting on June 1, 2021, until his death on October 31, 2021, Marion presented with obvious signs of ongoing psychiatric crisis, including incidents on June 1, 2021 and June 2, 2021 where Marion was aggressive and hostile toward correctional staff.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 20.**

21.     On June 3, 2021, following his mental health assessment, Marion was assigned to acute/subacute psychiatric treatment in Cermak Health Services Psychiatric Special Care Units ("PSCU"). Marion's treatment inside PSCU was targeted to address Marion's acute psychiatric symptoms. Marion remained housed in PSCU from June 3, 2021 until August 26, 2021.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Marion's medical care and treatment. Defendants**

6

**deny the remaining allegations asserted in Paragraph 21.**

22.     At all relevant times herein, PSCU provided 24-hour medical and mental health care to pretrial detainees including structured support to reduce symptoms and prevent harm to self and others. PSCU was staffed with nursing and mental health staff on a 24-hour basis. PSCU provided a therapeutic environment with suicide resistant cells and access to therapeutic seclusion and restraint. PSCU also provided daily psychiatric follow-up care. Pretrial detainees housed in PSCU were exempt from discipline inside CCDOC.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 22.**

23.     On June 4, 2021, Andrew Greiner PA-C examined Marion and noted signs of delusion, paranoia, and hostility.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 23.**

24.     On June 8, 2021, Ahleah C. Balawender PA-C diagnosed Marion with Differential Psychosis and prescribed Marion with anti-psychotropic medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 24.**

25.     On June 14, 2021, Marion refused his psychotropic medications and continued to experience delusions and grandiose ideas.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 25.**

26.     On June 16, 2021, Ahleah C. Balawender PA-C contacted Marion's mother, Plaintiff Joanna Wilson. According to Marion's medical chart, Plaintiff advised PA Balawender that in 2020, Marion traveled from his home in Arizona to Chicago to visit with friends. Plaintiff further reported that, during this visit, Marion was arrested by the Chicago Police Department,

and as a result, Marion was hospitalized at Northwestern Memorial Hospital for five (5) days and treated with psychotropic medication. Plaintiff advised that she was concerned about the side effects of Marion's medication. Plaintiff also advised that after Marion returned home to Arizona in August 2020, Marion displayed bizarre behavior including talking to the devil and complaining that people were chasing him.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 26.**

27.     Despite actual knowledge of Marion's persistent psychosis, PA Balawender, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. PA Balawender never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 27.**

28.     On June 19, 2021, Dr. Michael Bednarz, M.D. attempted to evaluate Marion in the mental health psychiatry infirmary; however, Marion refused to come to the cell door for an interview. Dr. Bednarz documented that he and staff "will continue close observation" of Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 28.**

29.     On June 21, 2021, Dr. Yaser Haq, M.D. diagnosed Marion with Differential Psychosis.  Dr. Haq prescribed anti-psychotic medication and ordered Marion to be placed in a psychiatric unit in PSCU with safety (well-being) checks conducted every fifteen (15) minutes for unpredictable behavior.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 29.**

30.     On June 29, 2021, a petition for involuntary medication was filed because of Marion's refusal to take his medications; however, this petition was later withdrawn because Marion apparently improved in compliance with his medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 30.**

31.     On August 25, 2021, Dr. Yaser Haq, M.D. evaluated Marion and noted that Marion was no longer on any medications despite his well-documented history of psychosis and earlier prescriptions of psychotropic medications.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 31.**

32.     Despite actual knowledge of Marion's persistent psychosis, Dr. Haq, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Dr. Haq never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 32.**

33.     On July 6, 2021, Marion was observed to be agitated, aggressive, acutely psychotic, and unable to de-escalate. As a result, emergency medication was administered to treat Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 33.**

34.     On July 9, 2021, Dr. Michael Bednarz, M.D. was informed by staff that Marion

was again agitated, aggressive, and belligerent. Marion yelled threats of harm and profanity to staff, flooded his cell, and smeared feces on his cell window. Staff attempts to de-escalate Marion were unsuccessful. Dr. Bednarz ordered administration of anti-psychotic medication and sedative medication. Dr. Bednarz never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 34.**

35.    On August 26, 2021, despite Marion's known psychiatric crisis, Marion was transferred from PSCU to super-maximum security in Division 9 for disciplinary reasons related to those incidents toward correctional staff on June 1, 2021 and June 2, 2021 when Marion first arrived in CCDOC. Marion was housed in Division 9 from August 26, 2021 until October 7, 2021. Marion would later be returned to Division 9 on October 29, 2021, where he remained until his death on October 31, 2021.

**Answer: Defendants admit Marion was housed in Division 9 from August 26, 2021 to October 7, 2021, and October 29, 2021 to October 31, 2021. Defendants admit Marion received disciplinary citations for assaulting staff on June 1, 2021 and June 2, 2021. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Marion's medical care and treatment. Defendants deny the remaining allegations asserted in Paragraph 35.**

36.    Division 9 is a super-maximum security housing facility located inside CCDOC. Substantially less medical and mental health care is provided in Division 9 than that which is provided in PSCU. For example, nursing care is only provided during medical rounds and mental health care is only provided as needed in Division 9 rather than 24-hour nursing and mental health care provided in PSCU. Significantly, unlike PSCU, a therapeutic environment with suicide resistant cells or access to therapeutic seclusion and restraint is not provided in Division 9.

**Answer: Defendants admit that Division 9 generally holds medium and maximum-security inmates. Defendants deny the remaining allegations asserted in Paragraph 36.**

37.     On September 29, 2021, Dr. Steve Paschos examined Marion after Marion smeared feces inside his jail cell in Division 9. Dr. Paschos noted that Marion had a past psychiatric history of psychosis with bipolar disorder and possible schizoaffective disorder. During this visit, Marion stated "Well I think I should back to [PSCU psychiatric care.] I'm suffering here I can't be in that cell so I'll keep smearing feces." Dr. Paschos confirmed the diagnosis of Differential Psychosis and documented that he would consider transferring Marion back to PSCU on a long-term basis. Dr. Paschos did not immediately return Marion back to PSCU. Dr. Paschos never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 37.**

38.     Despite actual knowledge of Marion's persistent psychosis, Dr. Paschos, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 38.**

39.     On October 6, 2021, while in Division 9 of the CCDOC, Marion was seen by a mental health specialist where Marion reported suicidal ideations with a clear plan of execution.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 39.**

40.     On October 7, 2021, Marion was returned to a psychiatric unit in PSCU for further

evaluation after Marion reported suicidal ideations.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 40.**

41.    On October 19, 2021, Marion completed a Health Service Request Form  where Marion requested a psychological evaluation because of his desire to kill his cellmate and himself.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 41.**

42.    On October 20, 2021, Marion was placed in acute care for psychological evaluation in PSCU. On that date, Dr. Michael Bednarz, M.D. conducted a clinical interview of Marion. Dr. Bednarz concluded that Marion's suicide risk was low and that Marion reached maximum benefit from an inpatient setting. Dr. Bednarz determined that it would be appropriate to transfer Marion to outpatient mental health.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 42.**

43.    Despite actual knowledge of Marion's persistent psychosis, Dr. Bednarz, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 43.**

44.    On October 26, 2021, Marion was seen by Jason Sprague, who cleared Marion to return to Division 9.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 44.**

45.     Despite actual knowledge of Marion's persistent psychosis, Mr. Sprague, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Mr. Sprague never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 45.**

46.     On October 29, 2021, Marion was transferred back to super-maximum security at Division 9.

**Answer: Defendants admit Marion was present in Division 9, Tier 1F, on October 29, 2021. Defendants deny the remaining allegations asserted in Paragraph 46.**

47.     Later that same day after being returned to Division 9, Lauren Cartwright saw Marion pursuant to a non-emergency health phone request form where Marion stated: "everything inside me by doing things illegal." During treatment of Marion, Ms. Cartwright learned that Marion had been refusing psychotropic medication since October 22, 2021. Moreover, Marion indicated that he wanted to hurt himself. Ms. Cartwright prescribed a treatment plan to provide observation and follow-up care. Ms. Cartwright never recommended that Marion be transferred back to PSCU for acute psychiatric care.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 47.**

48.     Despite actual knowledge of Marion's persistent psychosis, Ms. Cartwright, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or

13

correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Cartwright never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 48.**

49.     Afterwards, on October 29, 2021, Nikki Ruffin also saw Marion where, after review of Marion's clinical chart and despite Marion's obvious psychiatric crisis, Ms. Ruffin indicated that there was "nothing relevant to indicate that [Marion] should not currently be placed in [Division 9] housing." Ms. Ruffin prescribed a treatment plan to provide observation and follow-up care. Ms. Ruffin never recommended that Marion be transferred back to PSCU for acute psychiatric care.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 49.**

50.     Despite actual knowledge of Marion's persistent psychosis, Ms. Ruffin, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Ruffin never evaluated the efficacy of the administration  and dosage of these medications or identified contraindications  or other adverse side effects on Marion.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 50.**

51.     October 31, 2021, Defendant Vargas was assigned to security of Marion's living unit in Division 9. During his shift, Defendant Vargas worked alone and was required to conduct

periodic safety checks of the detainees in this living unit every thirty (30) minutes to ensure the health and safety of the detainees.

**Answer: Defendant Vargas admits to being the tier officer for Tier 1F in Division 9 on October 31, 2021. Defendants admit officers are required to conduct periodic safety checks on detainees generally every thirty (30) minutes. Defendants deny the remaining allegations asserted in Paragraph 51.**

52.     On October 31, 2021, Defendant Vargas left his post unattended without requesting backup to keep watch of the tier and did not perform a safety check of the living unit despite actual knowledge that the detainees, including Marion, had acute psychiatric concerns that included risks of self-harm such as suicide.

**Answer: Defendant Vargas admits to briefly leaving Tier 1F on October 31, 2021. Defendants deny the allegations asserted in Paragraph 52.**

53.     While Vargas was away from his post at Marion's living unit, Marion hung himself to death.

**Answer: Defendants admit Defendant Vargas was not present on Tier 1F when Marion committed suicide by hanging himself. Defendants deny the remaining allegations asserted in Paragraph 53.**

## *MONELL* ALLEGATIONS AGAINST COOK COUNTY AND THE SHERIFF

54.     Marion's death was caused by the customs, practices, policies, or decisions of policy-making officials for Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff.

**Answer: Defendants deny the allegations asserted in Paragraph 54.**

55.     By way of background, on July 11, 2008, the United States Department of Justice, pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, issued its letter of findings ("DOJ Letter of Findings") to Cook County and the Sheriff regarding various

conditions at CCDOC.

**Answer: Defendants admit the allegations asserted in Paragraph 55.**

56. The DOJ Letter of Findings documented widespread practices, customs, policies, and decisions of policy-making officials which demonstrated deliberate indifference to the adequacy or constitutionality of the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants admit that the United States Department of Justice ("DOJ") investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter. Defendants deny the remaining allegations asserted in Paragraph 56.**

57. Specifically, the DOJ Letter of Findings documented systematic deficiencies in the mental health care at CCDOC.

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter. Defendants deny the remaining allegations asserted in Paragraph 57. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.**

58. The DOJ Letter of Findings memorialized several notable examples where Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff staff failed "to address the specific needs of inmates with mental illness, including "(1) failure to timely and appropriately evaluate inmates for treatment; (2) inadequate assessment and treatment; (3) inadequate psychotherapeutic medication administration; and (4) inadequate suicide prevention."

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter. Defendants deny the remaining**

allegations asserted in Paragraph 58. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.

59.     The DOJ Letter of Findings found that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff failed to comport with generally accepted professional standards of correctional mental health care.

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter.  Defendants deny the remaining allegations asserted in Paragraph 59. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.**

60.     Moreover, the DOJ Letter of Findings memorialized several examples where staff of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "failed to provide adequate care to inmates with serious medical needs that require monitoring and follow-up medical care." The DOJ stated that according to appropriate correctional medical care standards, "[i]nmates who suffer from chronic medical illnesses must be regularly monitored by medical professionals to prevent the progression of their illnesses. Monitoring should occur on a regular basis to ensure that symptoms are under control and that medications are appropriate based on generally accepted correctional medical standards. However, [the DOJ] found that [CCDOC] was deficient in ensuring that patients are seen on  a regular basis…and that inmates are monitored and treated to prevent the progression of illnesses."

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008.  Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter.  Defendants deny the remaining allegations asserted in Paragraph 60. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.**

61.     The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health

Services and the Sheriff "provide adequate care for inmates with self-injurious behavior." Additionally, the DOJ recommended that staff should "ensure that administrative segregation and observation status are not used to punish inmates for symptoms of mental illness and behaviors that are, because of mental illness, beyond their control."

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter. Defendants deny the remaining allegations asserted in Paragraph 61. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.**

62. The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff provide adequate staffing, training, and supervision of medical and correctional staff necessary to ensure adequate medical care is provided.

**Answer: Defendants admit that the DOJ investigated and issued a Letter of Findings on July 11, 2008. Defendants submit that the text of this letter speaks for itself and deny any allegations inconsistent with the plain text of the letter. Defendants deny the remaining allegations asserted in Paragraph 62. Defendants specifically deny that the 2008 letter discussed or reflected CCDOC practices or conditions in 2021.**

63. After the DOJ Letter of Findings, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered a consent decree ("Agreed Order") on May 13, 2010, in the matter of *United States v. Cook County, et al.*, case number 10-cv-2946, pending in the United States District Court for the Northern District of Illinois.

**Answer: Defendants admit a consent decree was entered in the matter of *United States v. Cook County, et al*., Case No. 10-cv-02946. Defendants deny that the consent decree remains in effect, or that case number 10-cv-2946 is currently "pending." Defendants deny the remaining allegations asserted in Paragraph 63.**

64.     As a result of this Agreed Order, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered an Inter-Agency Agreement for mutual responsibilities in providing health care, including mental health care, to detainees at the CCDOC.

**Answer: Defendant Sheriff Dart admits the existence of an Inter-Agency Agreement between Cook County and the Cook County Sheriff's Office. Defendant Vargas lacks knowledge about the Inter-Agency Agreement. Defendants deny the remaining allegations asserted in Paragraph 64.**

65.     Because of the Agreed Order and all times thereafter, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff acknowledged their mutual obligation to ensure that all inmates received adequate, timely, and prompt access to mental health care and follow-up mental health care.

**Answer: Defendant Sheriff Dart admits only those duties and responsibilities prescribed by law and deny any duties inconsistent therewith. Defendants deny that the consent decree remains in effect, or that case number 10-cv-2946 is currently "pending." Defendants deny the remaining allegations asserted in Paragraph 65.**

66.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, repeatedly disregarded the obvious psychiatric crisis experienced by Marion by failing to initiate and maintain mental health interventions.

**Answer: Defendants deny the allegations asserted in Paragraph 66.**

67.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that necessary interventions were provided for

detainees presenting with psychiatric crisis.

**Answer: Defendants deny the allegations asserted in Paragraph 67.**

68.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, transferred Marion to a super-maximum security housing unit without suicide resistant interventions.

**Answer: Defendants deny the allegations asserted in Paragraph 68.**

69.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that staff provided adequate and timely acute care and follow-up care to detainees with mental health issues, including Marion, causing the plainly obvious consequence of harm to Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 69.**

70.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to properly maintain adequate staffing levels to ensure that safety (well-being) checks would be performed for those detainees with obvious psychiatric illness, including Marion, who hung himself while the correctional officer left his post.

**Answer: Defendants deny the allegations asserted in Paragraph 70.**

71.     As a result of the widespread practice or custom, express policy, or decision by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, Marion suffered harm and death.

**Answer: Defendants deny the allegations asserted in Paragraph 71.**

## COUNT I
## 42 U.S.C. § 1983 - WRONGFUL DEATH ACT
## COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

72.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 72 of Count I.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 72 of Count I.**

73.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 73.**

74.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 74.**

75.     Defendant was aware that Marion had a serious medical need.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 75.**

76.     As a result of the widespread practices or customs, express policies, or decisions

by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 76.**

77.    As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his mental illness.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 77.**

78.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 78.**

79.    Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and  Cermak Health Services.

**Answer: Count I, which includes Paragraphs 72 through 79 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 79.**

**COUNT II**
**42 U.S.C. § 1983 – WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF**

80.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 80 of Count II.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 80 of Count II.**

81.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Sheriff Dart admits the allegations asserted in Paragraph 81. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas admits the allegations asserted in Paragraph 81.**

82.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 82. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 82.**

83.     Defendant was aware that Marion had a serious medical need.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 83. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 83.**

84.     As a result of the widespread practices or customs, express policies, or decisions

23

by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 84. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 84.**

85.     As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 85. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 85.**

86.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 86. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 86.**

87.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 87. Count II, which includes Paragraphs 80 through 87 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the**

allegations asserted in Paragraph 87.

## COUNT III
## 42 U.S.C. § 1983 – SURVIVAL ACT
## COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

88.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 88 of Count III.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 88 of Count III.**

89.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 89.**

90.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 90.**

91.     Defendant was aware that Marion had a serious medical need.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 91.**

92.     As a result of the widespread practices or customs, express policies, or decisions

by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 92.**

93.     As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 93.**

94.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 94.**

95.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and  Cermak Health Services.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 95.**

96.     As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not

limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42

U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Count III, which includes Paragraphs 88 through 96 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants deny the allegations asserted in Paragraph 96.**

## COUNT IV
## 42 U.S.C. § 1983 – SURVIVAL ACT
## <u>COOK COUNTY SHERIFF</u>

97.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 97 of Count IV.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 97 of Count IV.**

98.    Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Sheriff Dart admits the allegations asserted in Paragraph 98. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas admits the allegations asserted in Paragraph 98.**

99.    Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 99. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 99.**

100.     Defendant was aware that Marion had a serious medical need.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 100. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 100.**

101.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 101. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 101.**

102.     As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 102. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 102.**

103.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency

28

and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 103. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 103.**

104.    Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 104. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 104.**

105.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Defendant Sheriff Dart denies the allegations asserted in Paragraph 105. Count IV, which includes Paragraphs 98 through 105 hereinafter, is not asserted against Defendant Vargas. To the extent an answer is required, Defendant Vargas denies the allegations asserted in Paragraph 105.**

### COUNT V
### 42 U.S.C. § 1983 - WRONGFUL DEATH ACT
### YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, NIKKI RUFFIN, AND OFFICER B. VARGAS 16976

106.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 106 of Count V.

29

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 106 of Count V.**

107.    Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 107. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 107.**

108.    Marion had an objectively serious medical need because Marion had a  serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 108. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 108.**

109.    Defendants were aware that Marion had a serious medical need.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 109. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 109.**

110.    Defendants consciously disregarded and failed to take reasonable measures  to

provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 110. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 110.**

111.    As a result of the acts and omissions of Defendants, Marion suffered harm caused by Defendants' deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 111. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 111.**

112.    At all relevant times, Defendants acted under color of law.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 112. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart admits the allegations asserted in Paragraph 112.**

113.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 113. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 113.**

114.    Marion's death was the result of Defendants' deliberate indifference.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 114. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 114.**

115. Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 115. Count V, which includes Paragraphs 106 through 115 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 115.**

**COUNT VI**
**42 U.S.C. § 1983 - SURVIVAL ACT**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, NIKKI RUFFIN, AND OFFICER B. VARGAS 16976**

116. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 116 of Count VI.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 116 of Count VI.**

117. Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 117. Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart**

**admits the allegations asserted in Paragraph 117.**

118.    Marion had an objectively serious medical need because Marion had a  serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 118. Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 118.**

119.    Defendants were aware that Marion had a serious medical need.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 119. Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 119.**

120.    Defendants consciously disregarded and failed to take reasonable measures  to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 120. Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart denies the allegations asserted in Paragraph 120.**

121.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 121. Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against**

**Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart**

**denies the allegations asserted in Paragraph 121.**

122.    At all relevant times, Defendants acted under color of law.

**Answer: Defendant Vargas admits the allegations asserted in Paragraph 122.**

**Count VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against**

**Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart**

**admits the allegations asserted in Paragraph 122.**

123.    As a direct and proximate result of the aforesaid acts or omissions of Defendant,

Marion sustained injuries of a personal and pecuniary nature before his death, including

but not limited to conscious pain and suffering; had he survived, he would have been

entitled to bring an action for those injuries and this action survives him under 42 U.S.C.

§ 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 123. Count**

**VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against**

**Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart**

**denies the allegations asserted in Paragraph 123.**

124.    Defendants' acts were willful, wanton, malicious, oppressive, and done with

reckless indifference and/or disregard for Marion's rights.

**Answer: Defendant Vargas denies the allegations asserted in Paragraph 124. Count**

**VI, which includes Paragraphs 116 through 124 hereinafter, is not asserted against**

**Defendant Sheriff Dart. To the extent an answer is required, Defendant Sheriff Dart**

**denies the allegations asserted in Paragraph 124.**

**COUNT VII**
**PROFESSIONAL NEGLIGENCE – WRONGFUL DEATH ACT**
**COOK COUNTY d/b/a CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**<u>AND NIKKI GRIFFIN</u>**

125.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 125 of Count VII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 125 of Count VII.**

126.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services to provide medical services to patients at CCDOC.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services provide medical services to detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 126.**

127.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized actual and/or apparent agents and employees of Defendant Cook County.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services staff provide patient care. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 127.**

128.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County

d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 128.**

129.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 129.**

130.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

    f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

    g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

    h.      were otherwise careless and negligent.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 130.**

131.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was negligent in one or more of the following ways:

    a.      failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

    b.      mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

    c.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

    d.      failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

    e.      failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

    f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

    g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

    h.      were otherwise careless and negligent.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 131.**

132.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 132.**

133.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 133.**

134.    The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2- 622(a)(1) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

**Answer: Count VII, which includes Paragraphs 125 through 134 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 134.**

**COUNT VIII**
**PROFESSIONAL NEGLIGENCE – SURVIVAL ACT**
**COOK COUNTY D/B/A CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**AND NIKKI RUFFIN**

135.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 135 of Count VIII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs**

1 through 71 of the Complaint as fully set forth herein in Paragraphs 135 of Count VIII.

136.     At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed workers to operate CCHHS and its affiliate Cermak Health Services, which was and is a medical facility serving the detainees at CCDOC, and provided medical services to patients therein.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services provide medical services to detainees at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 136.**

137.     At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized agents and/or apparent agents and employees of Defendant Cook County.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit Cook County and Cermak Health Services staff provide patient care. Defendants deny the remaining allegations asserted in Paragraph 137.**

138.     At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 138.**

139.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 139.**

140.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.      failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.      mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.      failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.      failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.      were otherwise careless and negligent.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not**

**asserted against Defendants. To the extent an answer is required, Defendants lack knowledge**

**or information sufficient to form a belief about the truth of the allegations asserted in**

**Paragraph 140.**

141.     Between June 1, 2021, and continuing through October 31, 2021, Cook County

d/b/a CCHHS and Cermak Health Services was professionally negligent in the following ways:

  a.     failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

  b.     mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

  c.     failed to initiate and upgrade presumptive suicide precautions to protect Marion;

  d.     failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

  e.     failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

  f.     failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

  g.     failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

  h.     were otherwise careless and negligent.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not**

**asserted against Defendants. To the extent an answer is required, Defendants lack**

**knowledge or information sufficient to form a belief about the truth of the allegations**

**asserted in Paragraph 141.**

142.   As a direct and proximate result of the aforesaid negligent acts or omissions of the

Defendants, Marion sustained injuries of a personal and pecuniary nature before his death,

including but not limited to conscious pain and suffering; had he survived, he would have been

entitled to bring an action for those injuries and this action survives him.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not**

asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 142.

143. Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 143.**

144. The affidavit of one of Plaintiff's attorneys as required by 735 ILCS 5/2- 622(a)(1) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

**Answer: Count VIII, which includes Paragraphs 135 through 144 hereinafter, is not asserted against Defendants. To the extent an answer is required, Defendants admit the allegations asserted in Paragraph 144.**

**COUNT IX**
**WILLFUL AND WANTON - WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

145. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 145 of Count IX.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 145 of Count IX.**

146. At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendants admit employees of the Cook County Sheriff's Office work at**

CCDOC. Defendants deny the remaining allegations asserted in Paragraph 146.

147. At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 147.**

148. At all relevant times, the aforesaid personnel, including Officer B. Vargas 16976, were duly authorized actual and/or apparent agents and employees of Cook County or the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that Defendant Vargas was an employee of the Cook County Sheriff's Office acting within the scope of his employment during the relevant time period. Defendants deny the remaining allegations asserted in Paragraph 148.**

149. On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 149.**

150. At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants deny the allegations asserted in Paragraph 150.**

151. Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, were willful and wanton in the following ways:

> a. failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;
>
> b. failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;
>
> c. failed to reasonably summon medical care for Marion following his

diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.    were otherwise willful and wanton.

**Answer: Defendants deny the allegations asserted in Paragraph 151.**

152.    As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Defendants deny the allegations asserted in Paragraph 152.**

153.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 153.**

**COUNT X**
**WILLFUL AND WANTON - SURVIVAL ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

154.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 154 of Count X.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 154 of Count X.**

155.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendants admit employees of the Cook County Sheriff's Office work at CCDOC. Defendants deny the remaining allegations asserted in Paragraph 155.**

156.    At all relevant times, the Sheriff employed personnel to ensure adequate health,

safety, and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendants deny the allegations asserted in Paragraph 156.**

157.    At all relevant times, the aforesaid personnel including Officer B. Vargas 16976 were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that Defendant Vargas was an employee of the Cook County Sheriff's Office acting within the scope of his employment during the relevant time period. Defendants deny the remaining allegations asserted in Paragraph 157.**

158.   On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 158.**

159.   At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants deny the allegations asserted in Paragraph 159.**

160.   Between June 1, 2021, and continuing through October 31, 2021, Defendant the Sheriff, by and through its employees and agents including Officer Vargas, was willful and wanton in the following ways:

   a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

   b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

   c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

   d.    failed to ensure that the detainee grievance process or health service

45

request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.  were otherwise willful and wanton.

**Answer: Defendants deny the allegations asserted in Paragraph 160.**

161.  As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through its agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**Answer: Defendants deny the allegations asserted in Paragraph 161.**

162.  Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations asserted in Paragraph 162.**

### COUNT XI
### NEGLIGENCE – WRONGFUL DEATH ACT
### COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976

163.  Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 163 of Count XI.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 163 of Count XI.**

164.  At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendant Sheriff Dart, in his official capacity, admits to employing corrections personnel at CCDOC. Defendants deny the remaining allegations asserted in**

**Paragraph 164.**

165.   At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendant Dart admits to employing personnel to ensure adequate safety of detainees, including Marion, at CCDOC. Defendants deny that the Sheriff's Office employed medical providers and deny the remaining allegations asserted in Paragraph 165.**

166.   At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that personnel employed by the CCDOC were authorized to act within the scope of their employment. Defendants deny the remaining allegations asserted in Paragraph 166.**

167.   On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 167.**

168.   At all relevant times, based on the custodial relationship, the Sheriff's agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants admit only those duties and responsibilities prescribed by law and deny any duties inconsistent therewith. Defendants deny the remaining allegations asserted in Paragraph 168.**

169.   Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through their employees and agents including Officer Vargas, was negligent in one or more of the following ways:

> a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

b.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

c.      failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

d.      failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

e.      were otherwise careless and negligent.

**Answer: Defendants deny the allegations asserted in Paragraph 169.**

170.    As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**Answer: Defendants deny the allegations asserted in Paragraph 170.**

171.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

**Answer: Defendants admit Plaintiff brings this lawsuit pursuant to the Wrongful Death Act. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 171.**

**COUNT XII**
**NEGLIGENCE – SURVIVAL ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

172.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 172 of Count XII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 172 of Count XII**

173.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**Answer: Defendant Sheriff Dart, in his official capacity, admits to employing**

personnel at CCDOC. **Defendants deny the remaining allegations asserted in Paragraph 173.**

174.   At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**Answer: Defendant Dart admits to employing personnel to ensure adequate safety of detainees, including Marion, at CCDOC. Defendants deny that the Sheriff's Office employed medical providers and deny the remaining allegations asserted in Paragraph 174.**

175.   At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**Answer: Defendants admit that personnel employed by the CCDOC were authorized to act within the scope of their employment. Defendants deny the remaining allegations asserted in Paragraph 175.**

176.   On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**Answer: Defendants deny the allegations asserted in Paragraph 176.**

177.   At all relevant times, based on the custodial relationship, the Sheriff's agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**Answer: Defendants admit only those duties and responsibilities prescribed by law and deny any duties inconsistent therewith. Defendants deny the remaining allegations asserted in Paragraph 177.**

178.   Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, was negligent in one or more of the following ways:

> a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate

medical care;

b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

e.    were otherwise careless and negligent.

**Answer: Defendants deny the allegations asserted in Paragraph 178.**

179.   As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through their agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**Answer: Defendants deny the allegations asserted in Paragraph 179.**

180.   Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**Answer: Defendants admit Plaintiff brings this action, in part, pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in Paragraph 180.**

## COUNT XIII
## INDEMNIFICATION CLAIM - COOK COUNTY

181.   Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 180 as fully set forth herein in paragraph 181 of Count XIII.

**Answer: Defendants reassert and incorporate their answers contained in Paragraphs 1 through 71 of the Complaint as fully set forth herein in Paragraphs 181 of Count XIII.**

182.    Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/5-1106, and 55 ILCS 5/3-6016, Cook County is empowered and directed to pay any judgment for compensatory damages and any associated attorneys' fees and costs for which Cook County, the Sheriff, and/or their agents or employees, acting within the scope of his or her employment, are found liable.

**Answer: Defendants admit the allegations asserted in Paragraph 182.**

183.   The acts and/or omissions of all Defendants were committed within the scope of their employment.

**Answer: Defendants deny the allegations asserted in Paragraph 183.**

184.   If a judgment for compensatory damages and attorneys' fees and costs is entered against any Defendant, Cook County must pay the judgment as well as the associated attorneys' fees and costs.

**Answer: Defendants admit the allegations asserted in Paragraph 184.**

**AFFIRMATIVE DEFENSES**

Further answering Plaintiff's Complaint, Defendants allege the following separate affirmative defenses against Plaintiff.

**I.**
**Qualified Immunity**

1.    With respect to the Plaintiff's claims, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART, in their individual capacities, did not cause the deprivation of any constitutional rights of Marion.

2.    The conduct of Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART were at all times objectively reasonable and did not violate any of Marion's clearly established Constitutional rights.

3.    Accordingly, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART, in their individual capacities, are entitled to the defense of qualified immunity.

**II.**
**Failure to Mitigate**

4.    To the extent it is revealed that Marion failed to take reasonable measures to mitigate his alleged injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

5.    Defendants reserve the right to amend the affirmative defenses at any point throughout the course of discovery.

## III.
## Tort Immunity Act

6.    Plaintiff claims a violation of Illinois state laws in the Complaint at Law.

7.    On or before October 31, 2021, there were in full force statutes commonly known as "Tort Immunities," which provide as follows:

8.    <u>745 ILCS 10/4-105</u>:

"Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners."

9.    <u>745 ILCS 10/4-103</u>:

"Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners."

10.    <u>745 ILCS 10/2-201</u>:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

11.    <u>745 ILCS 10/2-109</u>:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

12.    Each of the Tort Immunities herein noted, as well as numerous other Tort

Immunities, apply to local public entities, and public employees, including Defendants, and therefore provide immunity for all claims/allegations alleged in Plaintiff's Complaint.

13. Pursuant to the Tort Immunities specifically quoted herein and all the Tort Immunities in the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, Defendants are immune from liability and Plaintiff's claims are barred from recovering any sum whatsoever from Defendants. *Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998).

## IV.
## Immunity from Punitive Damages

14. To the extent Plaintiff seeks punitive damages from Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART in their official capacities, Defendants assert immunity from same.

15. First, an official capacity suit is tantamount to a claim against the government entity itself. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

16. Second, a municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

17. Thus, in their official capacities, Defendants OFFICER B. VARGAS and COOK COUNTY SHERIFF THOMAS DART are immune from punitive damages.

## JURY DEMAND

With regard to any issue that may be appropriately heard by a jury in this cause of action, Defendants hereby demand a jury trial.

WHEREFORE, Defendants respectfully requests this Honorable Court enter judgment in their favor, against Plaintiff, and for any further relief the Court finds necessary and just.

**Dated: March 22, 2023.**

**Respectfully Submitted,**

53

KIMBERLY M. FOXX
State's Attorney of Cook County

By:     */s/ Antonio Lee*
        Antonio Lee
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-5439
        Antonio.lee@cookcountyil.gov