**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNA WILSON, | ) | |
| | ) | 22-cv-06886 |
| Plaintiff, | ) | |
| | ) | Hon. Andrea R. Wood |
| vs. | ) | |
| | ) | |
| COOK COUNTY, *et al*., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**COOK COUNTY DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, COOK COUNTY, ILLINOIS, Yaser Haq, M.D., Steve Paschos, M.D., Ahleah C. Balawender PA-C, Michael Bednarz. M.D., Jason Sprague, Lauren Cartwright, and Nikki Ruffin, (collectively "Cook County Defendants,") by and through their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney, Mia Buntic, and in response to Plaintiff's Complaint at Law, answer as follows:

**INTRODUCTION**

1.    This is an action for damages brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.,* the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Areon J. Marion ("Marion"), Deceased, as secured by the United States Constitution and under the laws of the State of Illinois.

**ANSWER: Cook County Defendants admit that Plaintiff brings this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.,* the Illinois Survival Act, 755 ILCS 5/27-6, and 42 U.S.C. § 1983, but deny that Marion was deprived of any rights.**

1

## PARTIES

2.      Marion died at the age of twenty-two (22) on or about October 31, 2021, following his incarceration as a detainee in the Cook County Department of Corrections ("CCDOC") in Chicago, Illinois. At all relevant times prior to his death, Marion was a citizen of the United States and resided within the jurisdiction of this Court.

**ANSWER: Cook County Defendants admit that Marion died at the age of twenty-two on or about October 31, 2021, and that he was a detainee at the Cook County Department of Corrections (CCDOC) at the time of his death. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 2.**

3.      At all relevant times, Joanna Wilson ("Wilson") was the mother of Marion, now deceased, was and is now a citizen of the United States and resides within the State of Arizona.

**ANSWER:    Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3.**

4.      On September 23, 2022, by order of the Circuit Court of Cook County, Wilson was lawfully appointed Independent Administrator of the Estate of Areon J. Marion, Deceased, for the purpose of prosecuting any and all causes of action accruing as a result of the injuries and death of Marion.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4.**

5.      At all relevant times, Cook County, Illinois ("Cook County"), was and is a unit of local government duly incorporated under the laws of the State of Illinois.

**ANSWER: Cook County Defendants admit the allegations in Paragraph 5.**

6.     Cook County is responsible under *respondeat superior* for the conduct of its employees and agents.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 6.**

7.     At all relevant times, Cook County through the Cook County Health and Hospitals System ("CCHHS") and its various facilities, including Cermak Health Services of Cook County ("Cermak Health Services"), provided medical services. Specifically, Cook County owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services, which was and is a medical facility serving the detainees in CCDOC, and provided medical services to patients therein.

**ANSWER:     Cook County Defendants admit that Cook County employs medical personnel and that they provide medical services to detainees in CCDOC. Cook County denies that is operates through the Cook County Health and Hospitals Systems. Cook County Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 7.**

8.     At all relevant times, Yaser Haq, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Haq was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**ANSWER:     Cook County Defendants admit that Dr. Haq is a licensed physician employed by Cook County and that he is sued in his individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 8.**

9.     At all relevant times, Steve Paschos, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual

capacity. At the time of the incident in this complaint, Defendant Paschos was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**ANSWER: Cook County Defendants admit that Dr. Paschos is a licensed physician employed by Cook County and that he is sued in his individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 9.**

10. At all relevant times, Michael Bednarz, M.D., is and was an employee of Cook County and a licensed physician in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Bednarz was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**ANSWER: Cook County Defendants admit that Dr. Bednarz is a licensed physician employed by Cook County and that he is sued in his individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 10.**

11. At all relevant times, Ahleah C. Balawender PA-C, is and was an employee of Cook County and a licensed physician in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Balawender was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**ANSWER: Cook County Defendants admit that Ms. Balawender is a physician's assistant employed by Cook County and that she is sued in her individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 11.**

4

12.     At all relevant times, Jason Sprague, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Sprague was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**ANSWER:     Cook County Defendants admit that Mr. Sprague is a licensed clinical professional counselor employed by Cook County and that he is sued in his individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 12.**

13.     At all relevant times, Lauren Cartwright, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Cartwright was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**ANSWER:     Cook County Defendants admit that Ms. Cartwright is a licensed clinical professional counselor employed by Cook County and that she is sued in her individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 13.**

14.     At all relevant times, Nikki Ruffin, is and was an employee of Cook County and a licensed professional counselor in the State of Illinois. She is being sued in her individual capacity. At the time of the incident in this complaint, Defendant Ruffin was engaged in the complained of conduct while acting within the scope of her employment and under color of state law.

**ANSWER:    Cook County Defendants admit that Ms. Ruffin is a licensed clinical professional counselor and was employed by Cook County and that she is sued in her individual capacity. Cook County Defendants deny the remaining allegations in Paragraph 14.**

15.    At all relevant times, the Cook County Sheriff ("the Sheriff"), served as the elected Sheriff of Cook County. The Sheriff is and was the warden of CCDOC and was responsible for the operations, policies, and/or management of CCDOC.

**ANSWER:    The allegations in Paragraph 15 do not pertain to Cook County and therefore no response is made thereto.**

16.    At all relevant times, the Sheriff agreed to work collaboratively with Cook County d/b/a CCHHS and Cermak Health Services in providing medical care to detainees in CCDOC. The Sheriff is being sued in its official capacity. The Sheriff is responsible under *respondeat superior* for the conduct of its employees and agents for all state claims.

**ANSWER:    The allegations in Paragraph 16 do not pertain to Cook County and therefore no response is made thereto.**

17.    At all relevant times, Officer B. Vargas 16976 ("Vargas"), is and was an employee of the Sheriff. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Vargas was engaged in the complained of conduct while acting within the scope of his employment and under color of state law.

**ANSWER:    The allegations in Paragraph 17 do not pertain to Cook County and therefore no response is made thereto.**

18.     At all relevant times, Cook County is the indemnitor of any judgment against Cook County, the Sheriff, or their employees and/or agents for compensatory damages and attorneys' fees and costs. Accordingly, Cook County is also named as indemnitor to this action in addition to its previously identified capacity.

**ANSWER:     Cook County Defendants admit that Cook County is the indemnitor and is named in this action as the indemnitor. Cook County Defendants deny the remaining allegations in Paragraph 18.**


## FACTUAL BACKGROUND

19.     Following his arrest for aggravated battery, Marion was remanded to the custody of the CCDOC on June 1, 2021.

**ANSWER:     Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19.**

20.     Throughout his time in CCDOC starting on June 1, 2021, until his death on October 31, 2021, Marion presented with obvious signs of ongoing psychiatric crisis, including incidents on June 1, 2021 and June 2, 2021 where Marion was aggressive and hostile toward correctional staff.

**ANSWER:     Cook County Defendants admit that Marion's medical records indicate he had incidents of aggressive behavior with correctional staff, but deny the remaining allegations in Paragraph 20.**

21.     On June 3, 2021, following his mental health assessment, Marion was assigned to acute/subacute psychiatric treatment in Cermak Health Services Psychiatric Special Care Units

("PSCU"). Marion's treatment inside PSCU was targeted to address Marion's acute psychiatric symptoms. Marion remained housed in PSCU from June 3, 2021 until August 26, 2021.

**ANSWER:** **Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21.**

22. At all relevant times herein, PSCU provided 24-hour medical and mental health care to pretrial detainees including structured support to reduce symptoms and prevent harm to self and others. PSCU was staffed with nursing and mental health staff on a 24-hour basis. PSCU provided a therapeutic environment with suicide resistant cells and access to therapeutic seclusion and restraint. PSCU also provided daily psychiatric follow-up care. Pretrial detainees housed in PSCU were exempt from discipline inside CCDOC.

**ANSWER:** **Cook County Defendants lack knowledge or information sufficient to form a belief about the allegations in Paragraph 22.**

23. On June 4, 2021, Andrew Greiner PA-C examined Marion and noted signs of delusion, paranoia, and hostility.

**ANSWER:** **Cook County Defendants admit that Marion's medical records indicate that Marion was examined by PA-C Andrew Greiner on June 4, 2021. Cook County Defendants lack knowledge or information sufficient to form a belied about the remaining allegations in Paragraph 23.**

24. On June 8, 2021, Ahleah C. Balawender PA-C diagnosed Marion with Differential Psychosis and prescribed Marion with anti-psychotropic medications.

**ANSWER:** **Cook County Defendants admit that Marion's medical records indicate he was seen by PA-C Ahleah Balawender on June 8, 2021. Cook County defendants deny the remaining allegations in Paragraph 24.**

8

25.     On June 14, 2021, Marion refused his psychotropic medications and continued to experience delusions and grandiose ideas.

**ANSWER:    Cook County Defendants admit that Marion's medical records indicate that he refused medications on June 14, 2021 and experienced delusions and grandiose ideas. Cook County Defendants lack knowledge or information sufficient to form a belied about the truth of the remaining allegations in Paragraph 25.**

26.     On June 16, 2021, Ahleah C. Balawender PA-C contacted Marion's mother, Plaintiff Joanna Wilson. According to Marion's medical chart, Plaintiff advised PA Balawender that in 2020, Marion traveled from his home in Arizona to Chicago to visit with friends. Plaintiff further reported that, during this visit, Marion was arrested by the Chicago Police Department, and as a result, Marion was hospitalized at Northwestern Memorial Hospital for five (5) days and treated with psychotropic medication. Plaintiff advised that she was concerned about the side effects of Marion's medication. Plaintiff also advised that after Marion returned home to Arizona in August 2020, Marion displayed bizarre behavior including talking to the devil and complaining that people were chasing him.

**ANSWER:    Cook County Defendants admit that Marion's medical records indicate that Ahleah Balawender contacted Marion's Mother, Joanna Coleman, on or around June 16, 2021, and that Ms. Coleman indicated that Marion was arrested while in Chicago and taken to Northwestern Memorial Hospital for five days where he was being prescribed psychotropic medication even though she felt that he did not require them, and that Marion returned to Arizona after the five day stay at Northwestern Memorial Hospital, and that Marion was observed engaging in bizarre behavior from time to time, including**

**talking about the devil, and reporting people coming after him and chasing him. Cook County Defendants deny the remaining allegations in Paragraph 26.**

27.     Despite actual knowledge of Marion's persistent psychosis, PA Balawender, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. PA Balawender never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**ANSWER:     Cook County Defendants deny the allegations in Paragraph 27.**

28.     On June 19, 2021, Dr. Michael Bednarz, M.D. attempted to evaluate Marion in the mental health psychiatry infirmary; however, Marion refused to come to the cell door for an interview. Dr. Bednarz documented that he and staff "will continue close observation" of Marion.

**ANSWER: Cook County Defendants admit the allegations in Paragraph 28.**

29.     On June 21, 2021, Dr. Yaser Haq, M.D. diagnosed Marion with Differential Psychosis. Dr. Haq prescribed anti-psychotic medication and ordered Marion to be placed in a psychiatric unit in PSCU with safety (well-being) checks conducted every fifteen (15) minutes for unpredictable behavior.

**ANSWER:     Cook County Defendants admit that Marion's medical records indicate that Dr. Haq examined Marion on June 21, 2021. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 29.**

10

30.     On June 29, 2021, a petition for involuntary medication was filed because of Marion's refusal to take his medications; however, this petition was later withdrawn because Marion apparently improved in compliance with his medications.

**ANSWER:   Cook County Defendants admit that Marion's medical records indicate that a petition for involuntary medication was filed on or around June 29, 2021, and that the petition was later withdrawn. Cook County Defendants deny the remaining allegations in Paragraph 30.**

31.     On August 25, 2021, Dr. Yaser Haq, M.D. evaluated Marion and noted that Marion was no longer on any medications despite his well-documented history of psychosis and earlier prescriptions of psychotropic medications.

**ANSWER:  Defendant Cook County lack knowledge or information sufficient to form a belief about the allegations in Paragraph 31.**

32.     Despite actual knowledge of Marion's persistent psychosis, Dr. Haq, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Dr. Haq never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 32.**

11

33.     On July 6, 2021, Marion was observed to be agitated, aggressive, acutely psychotic, and unable to de-escalate. As a result, emergency medication was administered to treat Marion.

**ANSWER: Cook County Defendants admit that emergency medication was administered to Marion on July 6, 2021. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 33.**

34.     On July 9, 2021, Dr. Michael Bednarz, M.D. was informed by staff that Marion was again agitated, aggressive, and belligerent. Marion yelled threats of harm and profanity to staff, flooded his cell, and smeared feces on his cell window. Staff attempts to de-escalate Marion were unsuccessful. Dr. Bednarz ordered administration of anti-psychotic medication and sedative medication. Dr. Bednarz never evaluated the efficacy of the administration and dosage of these medication or identified contraindications or other adverse side effects on Marion.

**ANSWER: Cook County Defendants admit that Dr. Bednarz ordered an anti-psychotic medication. Cook County Defendants deny the remaining allegations in Paragraph 34.**

35.     On August 26, 2021, despite Marion's known psychiatric crisis, Marion was transferred from PSCU to super-maximum security in Division 9 for disciplinary reasons related to those incidents toward correctional staff on June 1, 2021 and June 2, 2021 when Marion first arrived in CCDOC. Marion was housed in Division 9 from August 26, 2021 until October 7, 2021. Marion would later be returned to Division 9 on October 29, 2021, where he remained until his death on October 31, 2021.

12

**ANSWER:  At this time Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35.**

36.    Division 9 is a super-maximum security housing facility located inside CCDOC. Substantially less medical and mental health care is provided in Division 9 than that which is provided in PSCU. For example, nursing care is only provided during medical rounds and mental health care is only provided as needed in Division 9 rather than 24-hour nursing and mental health care provided in PSCU. Significantly, unlike PSCU, a therapeutic environment with suicide resistant cells or access to therapeutic seclusion and restraint is not provided in Division 9.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.**

37.    On September 29, 2021, Dr. Steve Paschos examined Marion after Marion smeared feces inside his jail cell in Division 9. Dr. Paschos noted that Marion had a past psychiatric history of psychosis with bipolar disorder and possible schizoaffective disorder. During this visit, Marion stated "Well I think I should back to [PSCU psychiatric care.] I'm suffering here I can't be in that cell so I'll keep smearing feces." Dr. Paschos confirmed the diagnosis of Differential Psychosis and documented that he would consider transferring Marion back to PSCU on a long-term basis. Dr. Paschos did not immediately return Marion back to PSCU. Dr. Paschos never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**ANSWER:  Cook County Defendants admit that Marion's medical records indicate that Dr. Paschos examined Marion on September 29, 2021 after Marion smeared feces in Division 9 and that Dr. Paschos noted that Marion had a past of psychiatric history of documented**

13

psychosis and self-reported bipolar disorder and that Marion stated during the visit: "Well I think I should go back to 2N I'm suffering here I can't be in that cell so I'll keep smearing feces." Cook County Defendants admit that Marion's medical records also indicate that Dr. Paschos noted that he would consider transferring Marion back to PSCU. Cook County Defendants deny the remaining claims in Paragraph 37.

38.     Despite actual knowledge of Marion's persistent psychosis, Dr. Paschos, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 38.**

39.     On October 6, 2021, while in Division 9 of the CCDOC, Marion was seen by a mental health specialist where Marion reported suicidal ideations with a clear plan of execution.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39.**

40.      On October 7, 2021, Marion was returned to a psychiatric unit in PSCU for further evaluation after Marion reported suicidal ideations.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40.**

41.     On October 19, 2021, Marion completed a Health Service Request Form where Marion requested a psychological evaluation because of his desire to kill his cellmate and himself.

14

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41.**

42.     On October 20, 2021, Marion was placed in acute care for psychological evaluation in PSCU. On that date, Dr. Michael Bednarz, M.D. conducted a clinical interview of Marion. Dr. Bednarz concluded that Marion's suicide risk was low and that Marion reached maximum benefit from an inpatient setting. Dr. Bednarz determined that it would be appropriate to transfer Marion to outpatient mental health.

**ANSWER:  Cook County Defendants admit the allegations in Paragraph 42.**

43.     Despite actual knowledge of Marion's persistent psychosis, Dr. Bednarz, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 43.**

44.     On October 26, 2021, Marion was seen by Jason Sprague, who cleared Marion to return to Division 9.

**ANSWER:  Cook County Defendants admit that Jason Sprague assessed Marion on October 26, 2021, but deny the remaining allegations in Paragraph 44.**

45.     Despite actual knowledge of Marion's persistent psychosis, Mr. Sprague, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's Psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks

15

of harm to himself or others. Mr. Sprague never evaluated the efficacy of the administration and dosage of those medications or identified contraindications or other adverse side effects on Marion.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 45.**

46. On October 29, 2021, Marion was transferred back to super-maximum security at Division 9.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.**

47. Later that same day after being returned to Division 9, Lauren Cartwright saw Marion pursuant to a non-emergency health phone request form where Marion stated: "everything inside me by doing things illegal." During treatment of Marion, Ms. Cartwright learned that Marion had been refusing psychotropic medication since October 22, 2021. Moreover, Marion indicated that he wanted to hurt himself. Ms. Cartwright prescribed a treatment plan to provide observation and follow-up care. Ms. Cartwright never recommended Marion be transferred back to PSCU for acute psychiatric care.

**ANSWER: Cook County Defendants admit that Marion's medical records indicate Ms. Cartwright saw Marion on October 29, 2021 pursuant to a non-emergency health phone request form that stated, among other things: "everything inside me by doing things illegal." Cook County Defendants admit that Ms. Cartwright wrote: "detainee was previously compliant to his medications (Abilify, Benadryl and Depakote), but has been refusing regularly since 10/22/2021," and that Ms. Cartwright prescribed a treatment plant to provide observation and follow up care. Cook County Defendants deny that Marion was in Division**

16

**9 and further deny that Marion told Ms. Cartwright that he wanted to hurt himself on October 29, 2021.**

48.     Despite actual knowledge of Marion's persistent psychosis, Ms. Cartwright, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Cartwright never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 48.**

49.     Afterwards, on October 29, 2021, Nikki Ruffin also saw Marion where, after review of Marion's clinical chart and despite Marion's obvious psychiatric crisis, Ms. Ruffin indicated that there was "nothing relevant to indicate that [Marion] should not currently be placed in [Division 9] housing." Ms. Ruffin prescribed a treatment plan to provide observation and follow-up care. Ms. Ruffin never recommended that Marion be transferred back to PSCU for acute psychiatric care.

**ANSWER: Cook County Defendants admit that Marion's medical records indicate that Nikki Ruffin saw Marion on October 29, 2021. Defendants deny that Paragraph 45 is a fulsome and accurate representation of that that note. Cook County Defendants deny the remaining allegations in Paragraph 49.**

50.     Despite actual knowledge of Marion's persistent psychosis, Ms. Ruffin, with deliberate indifference to the safety of Marion, never initiated any additional mental health interventions or discussed Marion's psychiatric crisis with other members of the medical staff or

correctional staff to ensure that Marion would be housed in an environment that prevents risks of harm to himself or others. Ms. Ruffin never evaluated the efficacy of the administration and dosage of these medications or identified contraindications or other adverse side effects on Marion.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 50.**

51.     October 31, 2021, Defendant Vargas was assigned to security of Marion's living unit in Division 9. During his shift, Defendant Vargas worked alone and was required to conduct periodic safety checks of the detainees in this living unit every thirty (30) minutes to ensure the health and safety of the detainees.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51.**

52.     On October 31, 2021, Defendant Vargas left his post unattended without requesting backup to keep watch of the tier and did not perform a safety check of the living unit despite actual knowledge that the detainees, including Marion, had acute psychiatric concerns that included risks of self-harm such as suicide.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52.**

53.     While Vargas was away from his post at Marion's living unit, Marion hung himself to death.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.**

18

## MONELL ALLEGATIONS AGAINST COOK COUNTY AND THE SHERIFF

54.     Marion's death was caused by the customs, practices, policies, or decisions of policy-making officials for Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 54.**

55.     By way of background, on July 11, 2008, the United States Department of Justice, pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, issued its letter of findings ("DOJ Letter of Findings") to Cook County and the Sheriff regarding various conditions at CCDOC.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55.**

56.     The DOJ Letter of Findings documented widespread practices, customs, policies, and decisions of policy-making officials which demonstrated deliberate indifference to the adequacy or constitutionality of the health, safety, and medical care provided to detainees at CCDOC.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56.**

57.     Specifically, the DOJ Letter of Findings documented systematic deficiencies in the mental health care at CCDOC.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57.**

58.     The DOJ Letter of Findings memorialized several notable examples where Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff staff failed "to address the specific needs of inmates with mental illness, including "(l) failure to timely and appropriately evaluate inmates for treatment; (2) inadequate assessment and treatment; (3) inadequate psychotherapeutic medication administration; and (4) inadequate suicide prevention."

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58.**

59.     The DOJ Letter of Findings found that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff failed to comport with generally accepted professional standards of correctional mental health care.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59.**

60.     Moreover, the DOJ Letter of Findings memorialized several examples where staff of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "failed to provide adequate care to inmates with serious medical needs that require monitoring and follow-up medical care." The DOJ stated that according to appropriate correctional medical care standards, "[i]nmates who suffer from chronic medical illnesses must be regularly monitored by medical professionals to prevent the progression of their illnesses. Monitoring should occur on a regular basis to ensure that symptoms are under control and that medications are appropriate based on generally accepted correctional medical standards. However, [the DOJ] found that [CCDOC] was deficient in ensuring that patients are seen on a regular basis... and that inmates are monitored and treated to prevent the progression of illnesses."

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60.**

61.    The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff "provide adequate care for inmates with self-injurious behavior." Additionally, the DOJ recommended that staff should "ensure that administrative segregation and observation status are not used to punish inmates for symptoms of mental illness and behaviors that are, because of mental illness, beyond their control."

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61.**

62.    The DOJ recommended that Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff provide adequate staffing, training, and supervision of medical and correctional staff necessary to ensure adequate medical care is provided.

**ANSWER: Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62.**

63.    After the DOJ Letter of Findings, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered a consent decree ("Agreed Order") on May 13, 2010, in the matter of *United States v. Cook County, et al.*, case number 10-cv-2946, pending in the United States District Court for the Northern District of Illinois.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63.**

64.     As a result of this Agreed Order, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff entered an Inter-Agency Agreement for mutual responsibilities in providing health care, including mental health care, to detainees at the CCDOC.

**ANSWER:  Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64.**

65.     Because of the Agreed Order and all times thereafter, Cook County _d/b/a CCHHS and Cermak Health Services and the Sheriff acknowledged their mutual obligation to ensure that all inmates received adequate, timely, and prompt access to mental health care and follow-up mental health care.

**ANSWER:   Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65.**

66.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, repeatedly disregarded the obvious psychiatric crisis experienced by Marion by failing to initiate and maintain mental health interventions.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 66.**

67.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that necessary interventions were provided for detainees presenting with psychiatric crisis.

22

**ANSWER: Cook County Defendants deny the allegations in Paragraph 67.**

68.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, transferred Marion to a super-maximum security housing unit without suicide resistant interventions.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 68.**

69.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to train and ensure that staff provided adequate and timely acute care and follow-up care to detainees with mental health issues, including Marion, causing the plainly obvious consequence of harm to Marion.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 69.**

70.     Despite knowledge of Marion's psychiatric emergency and its obligation to provide adequate and timely mental health care, Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, through widespread practice or custom, express policy, or decision by a policy making official, failed to properly maintain adequate staffing levels to ensure that safety (well-being) checks would be performed for those detainees with obvious psychiatric illness, including Marion, who hung himself while the correctional officer left his post.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 70.**

71.     As a result of the widespread practice or custom, express policy, or decision by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services and the Sheriff, Marion suffered harm and death.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 71.**

## COUNT I
## 42 U.S.C. § 1983 - WRONGFUL DEATH ACT
## COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

72.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 72 of Count I.

**ANSWER:   Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 72.**

73.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**ANSWER:  Paragraph 73 states a legal conclusion that does not require a response. To the extent a response is required, Cook County Defendants deny acting with deliberate indifference toward Marion.**

74.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 74.**

24

75.    Defendant was aware that Marion had a serious medical need.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 75.**

76.    As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 76.**

77.    As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his mental illness.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 77.**

78.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 78.**

79.    Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 79.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate

of Areon, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny that Plaintiff is entitled to relief.**

**COUNT II**
**42 U.S.C. § 1983 - WRONGFUL DEATH ACT**
**<u>COOK COUNTY SHERIFF</u>**

80. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 80 of Count II.

**ANSWER: Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 80.**

81. Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**ANSWER: Paragraph 81 states a legal conclusion that does not require a response. To the extent a response is required, the allegations in Paragraph 81 do not pertain to Cook County Defendants, and are therefore denied.**

82. Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER: The allegations in Paragraph 82 do not pertain to Cook County Defendants, and are therefore denied.**

83.   Defendant was aware that Marion had a serious medical need.

**ANSWER:   The allegations in Paragraph 83 do not pertain to Cook County Defendants, and are therefore denied.**

84.   As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER:   The allegations in Paragraph 84 do not pertain to Cook County Defendants, and are therefore denied.**

85.   As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**ANSWER:   The allegations in Paragraph 85 do not pertain to Cook County Defendants, and are therefore denied.**

86.   As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**ANSWER:   The allegations in Paragraph 86 do not pertain to Cook County Defendants, and are therefore denied.**

87.   Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

**ANSWER: The allegations in Paragraph 87 do not pertain to Cook County Defendants, and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny Plaintiff is entitled to relief.**

## COUNT III
## 42 U.S.C. § 1983 - SURVIVAL ACT
## COOK COUNTY d/b/a CCHHS and CERMAK HEALTH SERVICES

88.     Plaintiff reasserts and realleges the allegations contained in paragraphs I through 71 as fully set forth herein in paragraph 88 of Count III.

**ANSWER: Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 88.**

89.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**ANSWER: Paragraph 89 states a legal conclusion that does not require a response. To the extent a response is required, Cook County Defendants deny acting with deliberate indifference toward Marion and deny the remaining allegations in this Paragraph.**

90.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a

condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 90.**

91.     Defendant was aware that Marion had a serious medical need.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 91.**

92.     As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 92.**

93.     As a result of the acts and omissions of Cook County d/b/a CCHHS and Cermak Health Services, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 93.**

94.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 94.**

95.     Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of Cook County d/b/a CCHHS and Cermak Health Services.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 95.**

96.     As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 96.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny that Plaintiff is entitled to relief.**

**COUNT IV**
**42 U.S.C. § 1983 - SURVIVAL ACT**
**<u>COOK COUNTY SHERIFF</u>**

97.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 97 of Count IV.

**ANSWER: Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 97.**

98.     Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendant was prohibited from acting with deliberate indifference to the serious medical needs of Marion.

30

**ANSWER: Paragraph 98 states a legal conclusion that does not require a response. To the extent a response is required, the allegations in Paragraph 98 do not pertain to Cook County Defendants, and are therefore denied.**

99.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER: The allegations in Paragraph 99 do not pertain to Cook County Defendants, and are therefore denied.**

100.    Defendant was aware that Marion had a serious medical need.

**ANSWER: The allegations in Paragraph 100 do not pertain to Cook County Defendants, and are therefore denied.**

101.    As a result of the widespread practices or customs, express policies, or decisions by a policy making official as alleged above in paragraphs 50 through 67, Defendant consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER: The allegations in Paragraph 101 do not pertain to Cook County Defendants, and are therefore denied.**

102.    As a result of the acts and omissions of the Sheriff, Marion suffered harm caused by Defendant's deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**ANSWER: The allegations in Paragraph 102 do not pertain to Cook County Defendants, and are therefore denied.**

103.   As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**ANSWER: The allegations in Paragraph 103 do not pertain to Cook County Defendants, and are therefore denied.**

104.   Marion's death was caused by the widespread practices or customs, express policies, or decisions by a policy making official of the Sheriff.

**ANSWER: The allegations in Paragraph 104 do not pertain to Cook County Defendants, and are therefore denied.**

105.   As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**ANSWER: The allegations in Paragraph 105 do not pertain to Cook County Defendants, and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

32

**ANSWER: Cook County Defendants deny that Plaintiff is entitled to relief.**

**COUNT V**
**42 U.S.C. § 1983 - WRONGFUL DEATH ACT**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**NIKKI RUFFIN, AND OFFICER B. VARGAS 16976**

106.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 106 of Count V.

**ANSWER:  Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 106.**

107.    Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**ANSWER:  Paragraph 107 states a legal conclusion that does not require a response. To the extent a response is required, Cook County Defendants deny acting with deliberate indifference toward Marion and deny the remaining allegations in this Paragraph.**

108.    Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 108.**

33

109.    Defendants were aware that Marion had a serious medical need.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 109.**

110.    Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 110.**

111.    As a result of the acts and omissions of Defendants, Marion suffered harm caused by Defendants' deliberate indifference to Marion's medical needs, including his psychiatric emergency.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 111.**

112.    At all relevant times, Defendants acted under color of law.

**ANSWER:  Cook County Defendants admit that they acted under color of law in the scope of their employment. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

113.    As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell resulting in his death.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 113.**

114.    Marion's death was the result of Defendants' deliberate indifference.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 114.**

34

115.    Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

**ANSWER:  Cook County Defendants deny the allegations in Paragraph 115.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), compensatory damages, exemplary and punitive damages, any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny that Plaintiff is entitled to relief.**

### COUNT VI
### 42 U.S.C. § 1983 - SURVIVAL ACT
### YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, <u>NIKKI RUFFIN, AND OFFICER B. VARGAS 16976</u>

116.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 116 of Count VI.

**ANSWER:  Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 116.**

117.    Pursuant to the Eighth Amendment and Fourteenth Amendment to the United States Constitution, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, Nikki Ruffin, and Officer B. Vargas 16976 were prohibited from acting with deliberate indifference to the serious medical needs of Marion.

**ANSWER:  Paragraph 117 states a legal conclusion that does not require a response. To the extent a response is required, Cook County Defendants deny acting with**

**deliberate indifference toward Marion and deny the remaining allegations in this Paragraph.**

118.     Marion had an objectively serious medical need because Marion had a serious medical need during his psychiatric crisis that required a physician's care and/or Marion had a condition that was so obvious that even someone who is not a doctor would recognize it as requiring that it requires treatment.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 118.**

119.     Defendants were aware that Marion had a serious medical need.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 119.**

120.     Defendants consciously disregarded and failed to take reasonable measures to provide treatment for Marion's serious medical need or to provide treatment for the substantial risks to Marion's health.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 120.**

121.     As a result of Defendant's conduct, Marion manifested a psychiatric emergency and hung himself in his cell where Marion suffered injuries prior to his death.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 121.**

122.     At all relevant times, Defendants acted under color of law.

**ANSWER: Cook County Defendants admit that they acted under color of law in the scope of their employment. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

36

123.    As a direct and proximate result of the aforesaid acts or omissions of Defendant, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him under 42 U.S.C. § 1983, 735 ILCS 5/13-209, and 755 ILCS 5/27-6.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 123.**

124.    Defendants' acts were willful, wanton, malicious, oppressive, and done with reckless indifference and/or disregard for Marion's rights.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 124.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, demands judgment against Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), compensatory damages, exemplary and punitive damages, any and all reasonable attorneys' fees and costs, and any relief this Court deems proper and just.

**ANSWER:    Cook County Defendants deny Plaintiff is entitled to relief.**

### COUNT VII
### PROFESSIONAL NEGLIGENCE - WRONGFUL DEATH ACT COOK COUNTY d/b/a CCHHS AND CERMAK HEALTH SERVICES, YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D., AHLEAH C. BALAWENDERPA-C, JASON SPRAGUE, LAUREN CARTWRIGHT, AND NIKKI GRIFFIN

125.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 125 of Count VII.

**ANSWER:    Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 125.**

126.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCHHS and its facility Cermak Health Services to provide medical services to patients at CCDOC.

**ANSWER:    Cook County Defendants admit that Cook County employed personnel who provided medical services to patients at CCDOC. Cook County Defendants deny the remaining allegations in Paragraph 126.**

127.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized actual and/or apparent agents and employees of Defendant Cook County.

**ANSWER:    Cook County Defendants admit that Cook County employs physicians, residents, nurses, mental health professionals and other personnel to provide care to patients. Cook County Defendants deny the remaining allegations in Paragraph 127.**

128.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

38

**ANSWER: Cook County Defendants admit that Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were employed by Cook County. Cook County Defendants lack knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 128.**

129.     Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA- C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 129.**

130.     Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.      failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.      mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.      failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.      failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.      were otherwise careless and negligent.

**ANSWER:     Cook County Defendants deny the allegations in Paragraph 130.**

131.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was negligent in one or more of the following ways:

a.      failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.      mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.      failed to initiate and upgrade presumptive suicide precautions to protect Marion;

40

d.      failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.      failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.      failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.      failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.      were otherwise careless and negligent.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 131.**

132.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries resulting in his death on October 31, 2021.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 132.**

133.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

**ANSWER:    Cook County Defendants admit that this action is brought pursuant to the Wrongful Death Act. Cook County Defendants lack knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.**

134.    The affidavit of one of Plaintiffs attorneys as required by 735 ILCS 5/2-622(a)(l) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

**ANSWER: Cook County Defendants admit that Exhibit A of Plaintiff's Complaint is an affidavit by one of Plaintiff's attorneys, and that Exhibit B is a report of a consultation by a health care provider. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants, Cook County d/b/a CCHHS and Cermak Health Services, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin , and each of them, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny Plaintiff is entitled to relief.**

**COUNT VIII**
**PROFESSIONAL NEGLIGENCE - SURVIVAL ACT**
**COOK COUNTY D/B/A CCHHS AND CERMAK HEALTH SERVICES,**
**YASER HAQ, M.D., STEVE PASCHOS, M.D., MICHAEL BEDNARZ, M.D.,**
**AHLEAH C. BALAWENDER PA-C, JASON SPRAGUE, LAUREN CARTWRIGHT,**
**<u>AND NIKKI RUFFIN</u>**

135.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 135 of Count VIII.

**ANSWER:    Cook County Defendants reassert and reallege their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 135.**

136.    At all relevant times, Defendant Cook County d/b/a CCHHS and Cermak Health Services owned, operated, maintained, managed, controlled, funded, staffed, and/or employed workers to operate CCHHS and its affiliate Cermak Health Services, which was and is a medical facility serving the detainees at CCDOC, and provided medical services to patients therein.

**ANSWER:    Cook County Defendants admit that Cook County employed personnel who provided medical services to patients at CCDOC. Cook County Defendants deny the remaining allegations in Paragraph 136.**

137.    At all relevant times, Cook County d/b/a CCHHS and Cermak Health Services had a staff of physicians, residents, nurses, mental health professionals, and other personnel to provide for patient care. These physicians, residents, nurses, mental health professionals, and other personnel were duly authorized agents and/or apparent agents and employees of Defendant Cook County.

**ANSWER:    Cook County Defendants admit that Cook County employs physicians, residents, nurses, mental health professionals and other personnel to provide care to patients. Cook County Defendants lack knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 137.**

138.    At all relevant times, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin are and were actual and/or apparent agents and employees of Defendant Cook County d/b/a CCHHS and Cermak Health Services acting within the scope of their employment.

**ANSWER:    Cook County Defendants admit that Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were employed by Cook County. Cook County Defendants lack knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 138.**

139.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin knew or should have known that Marion was experiencing a psychiatric crisis and required acute psychiatric care in a therapeutic environment where Marion could not harm himself or others.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 139.**

140.    Between June 1, 2021, and continuing through October 31, 2021, Defendants Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin were negligent in one or more of the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.    failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.    failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.    failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.    failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.    were otherwise careless and negligent.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 140.**

141.    Between June 1, 2021, and continuing through October 31, 2021, Cook County d/b/a CCHHS and Cermak Health Services was professionally negligent in the following ways:

a.    failed to ensure reasonable follow-up medical care for Marion following the diagnosis and treatment of psychosis;

b.    mismanaged needed medication, including psychotropic medication, to reasonably care for Marion's psychosis;

c.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

d.     failed to ensure necessary interventions were made to protect Marion from harm, including placing Marion in a suicide resistant cell;

e.     failed to timely intervene to remove Marion from Division 9 in order to place Marion in a psychiatric housing unit;

f.     failed to ensure required continuity of care for Marion's psychosis at all times while incarcerated;

g.     failed to review or communicate Marion's medical history with other medical or correctional personnel following the diagnosis and treatment of his psychosis; and/or

h.     were otherwise careless and negligent.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 141.**

142.    As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**ANSWER:    Cook County Defendants deny the allegations in Paragraph 142.**

143.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**ANSWER:    Cook County Defendants admit that this action is brought pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6. Cook County Defendants lack**

knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

144.    The affidavit of one of Plaintiffs attorneys as required by 735 ILCS 5/2-622(a)(l) is attached hereto as Exhibit A. The report of consultation of a health care provider as required by 735 ILCS 5/2-622 is attached hereto as Exhibit B.

**ANSWER:   Cook County Defendants admit that Exhibit A of Plaintiff's Complaint is an affidavit by one of Plaintiff's attorneys, and that Exhibit B is a report of a consultation by a health care provider. Cook County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants, Cook County d/b/a CCHHS and Cermak Health Services, Yaser Haq, M.D., Steve Paschos, M.D., Michael Bednarz, M.D., Ahleah C. Balawender PA-C, Jason Sprague, Lauren Cartwright, and Nikki Ruffin , and each of them, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny Plaintiff is entitled to relief.**

**COUNTIX**
**WILLFUL AND WANTON - WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

145.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 145 of Count IX.

**ANSWER:    Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 145.**

47

146.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**ANSWER:    The allegations in Paragraph 146 do not pertain to Cook County Defendants and are therefore denied.**

147.    At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

**ANSWER:    The allegations in Paragraph 147 do not pertain to Cook County Defendants and are therefore denied.**

148.    At all relevant times, the aforesaid personnel, including Officer B. Vargas 16976, were duly authorized actual and/or apparent agents and employees of Cook County or the Sheriff acting within the scope of their employment.

**ANSWER:    The allegations in Paragraph 148 do not pertain to Cook County Defendants and are therefore denied.**

149.    On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**ANSWER:    The allegations in Paragraph 149 do not pertain to Cook County Defendants and are therefore denied.**

150.    At all relevant times, based on the custodial relationship, the Sheriffs agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**ANSWER:** **The allegations in Paragraph 150 do not pertain to Cook County Defendants and are therefore denied.**

151.    Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, were willful and wanton in the following ways:

a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.    were otherwise willful and wanton.

**ANSWER:** **The allegations in Paragraph 151 do not pertain to Cook County Defendants and are therefore denied.**

152.    As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**ANSWER:** **The allegations in Paragraph 152 do not pertain to Cook County Defendants and are therefore denied.**

153. Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*.

**ANSWER:** **The allegations in Paragraph 153 do not pertain to Cook County Defendants and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**ANSWER: The allegations in this paragraph do not pertain to Cook County Defendants and are therefore denied.**

## COUNT X
## WILLFUL AND WANTON - SURVIVAL ACT
## <u>COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976</u>

154. Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 154 of Count X.

**ANSWER:** **Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein in Paragraph 154.**

155. At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

50

**ANSWER:** **The allegations in Paragraph 155 do not pertain to Cook County Defendants and are therefore denied.**

156.    At all relevant times, the Sheriff employed personnel to ensure adequate health, safety, and medical care of the detainees at CCDOC, including Marion.

**ANSWER:** **The allegations in Paragraph 156 do not pertain to Cook County Defendants and are therefore denied.**

157.    At all relevant times, the aforesaid personnel including Officer B. Vargas 16976 were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**ANSWER:** **The allegations in Paragraph 157 do not pertain to Cook County Defendants and are therefore denied.**

158.    On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**ANSWER:** **The allegations in Paragraph 158 do not pertain to Cook County Defendants and are therefore denied.**

159.    At all relevant times, based on the custodial relationship, the Sheriff's agents and employees including Officer Vargas were under a duty to provide for the health, safety, and medical care provided to detainees at CCDOC.

**ANSWER:** **The allegations in Paragraph 159 do not pertain to Cook County Defendants and are therefore denied.**

160.    Between June 1, 2021, and continuing through October 31, 2021, Defendant the Sheriff, by and through its employees and agents including Officer Vargas, was willful and wanton in the following ways:

a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care with utter indifference to or in conscious disregard for the safety of others;

b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion with utter indifference to or in conscious disregard for the safety of others;

c.    failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis with utter indifference to or in conscious disregard for the safety of others;

d.    failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care with utter indifference to or in conscious disregard for the safety of others; and/or

e.    were otherwise willful and wanton.

**ANSWER:    The allegations in Paragraph 160 do not pertain to Cook County Defendants and are therefore denied.**

161.    As a direct and proximate result of the aforesaid acts or omissions of the Sheriff, by and through its agents and employees, Marion sustained injuries of a personal and pecuniary nature before his death, including but not limited to conscious pain and suffering; had he survived, he would have been entitled to bring an action for those injuries and this action survives him.

**ANSWER:** **The allegations in Paragraph 161 do not pertain to Cook County Defendants and are therefore denied.**

162.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755 ILCS 5/27-6.

**ANSWER:** **The allegations in Paragraph 162 do not pertain to Cook County Defendants and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**ANSWER:** **The allegations in this paragraph do not pertain to Cook County Defendants and are therefore denied.**

**COUNT XI**
**NEGLIGENCE - WRONGFUL DEATH ACT**
**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**

163.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 163 of Count XI.

**ANSWER:** **Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set for the herein in Paragraph 163.**

164.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**ANSWER:** **The allegations in Paragraph 164 do not pertain to Cook County Defendants and are therefore denied.**

165.     At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**ANSWER:** **The allegations in Paragraph 165 do not pertain to Cook County Defendants and are therefore denied.**

166.     At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**ANSWER:** **The allegations in Paragraph 166 do not pertain to Cook County Defendants and are therefore denied.**

167.     On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**ANSWER:** **The allegations in Paragraph 167 do not pertain to Cook County Defendants and are therefore denied.**

168.     At all relevant times, based on the custodial relationship, the Sheriffs agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**ANSWER: The allegations in Paragraph 168 do not pertain to Cook County Defendants and are therefore denied.**

169.     Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through their employees and agents including Officer Vargas, was negligent in one or more of the following ways:

a.     failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

b.     failed to initiate and upgrade presumptive suicide precautions to protect Marion;

c.     failed to reasonably summon medical care for Marion following his diagnosis and treatment of psychosis;

d.     failed to ensure that the detainee grievance process or health service request process reasonably afforded Marion access to medical care; and/or

e.     were otherwise careless and negligent.

**ANSWER: The allegations in Paragraph 169 do not pertain to Cook County Defendants and are therefore denied.**

170.     As a direct and proximate result of the aforesaid acts or omissions of the Defendant, Marion sustained injuries resulting in his death on October 31, 2021.

**ANSWER: The allegations in Paragraph 170 do not pertain to Cook County Defendants and are therefore denied.**

171.    Joanna Wilson is the duly appointed Independent Administrator of the Estate of Areon Marion, Deceased, and brings this action pursuant to the Wrongful Death Act, otherwise known as 740 ILCS 180/1, *et seq.*

**ANSWER: The allegations in Paragraph 171 do not pertain to Cook County Defendants and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands j dgment against the Defendants Sheriff and Officer Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this Court deems proper and just.

**ANSWER: The allegations in this paragraph do not pertain to Cook County Defendants and are therefore denied.**

**COUNT XII**
**NEGLIGENCE - SURVIVAL ACT**
<u>**COOK COUNTY SHERIFF AND OFFICER B. VARGAS 16976**</u>

172.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 71 as fully set forth herein in paragraph 172 of Count XII.

**ANSWER: Cook County Defendants reassert their responses to Paragraphs 1 through 71 as if fully set forth herein.**

173.    At all relevant times, the Sheriff owned, operated, maintained, managed, controlled, funded, staffed, and/or employed personnel at CCDOC.

**ANSWER: The allegations in Paragraph 173 do not pertain to Cook County Defendants and are therefore denied.**

174.    At all relevant times, the Sheriff employed personnel to ensure adequate safety and medical care of the detainees at CCDOC, including Marion.

**ANSWER: The allegations in Paragraph 174 do not pertain to Cook County Defendants and are therefore denied.**

175.    At all relevant times, the aforesaid personnel were duly authorized actual and/or apparent agents and employees of the Sheriff acting within the scope of their employment.

**ANSWER: The allegations in Paragraph 175 do not pertain to Cook County Defendants and are therefore denied.**

176.    On October 29, 2021, when Marion was transferred to Division 9, the Sheriff was aware that Marion was in psychiatric crisis and bereft of reason.

**ANSWER: The allegations in Paragraph 176 do not pertain to Cook County Defendants and are therefore denied.**

177.    At all relevant times, based on the custodial relationship, the Sheriffs agents and employees were under a duty to act reasonably for the health, safety, and medical care provided to detainees at CCDOC.

**ANSWER: The allegations in Paragraph 177 do not pertain to Cook County Defendants and are therefore denied.**

178.    Between June 1, 2021, and continuing through October 31, 2021, the Sheriff, by and through its employees and agents including Officer Vargas, was negligent in one or more of the following ways:

a.    failed to take reasonable action to summon medical care where he or she knew from his or her observations that Marion was in need of immediate medical care;

b.    failed to initiate and upgrade presumptive suicide precautions to protect Marion;

c.     failed to reasonably summon medical care for Marion following his

diagnosis and treatment of psychosis;

d.     failed to ensure that the detainee grievance process or health service request

process reasonably afforded Marion access to medical care; and/or

e.     were otherwise careless and negligent.

**ANSWER: The allegations in Paragraph 178 do not pertain to Cook County**

**Defendants and are therefore denied.**

179.     As a direct and proximate result of the aforesaid acts or omissions of the

Sheriff, by and through their agents and employees, Marion sustained injuries of a personal

and pecuniary nature before his death, including but not limited to conscious pain and

suffering; had he survived, he would have been entitled to bring an action for those injuries

and this action survives him.

**ANSWER: The allegations in Paragraph 179 do not pertain to Cook County**

**Defendants and are therefore denied.**

180.     Joanna Wilson is the duly appointed Independent Administrator of the Estate

of Areon Marion, Deceased, and brings this action pursuant to 735 ILCS 5/13-209 and 755

ILCS 5/27-6.

**ANSWER: The allegations in Paragraph 180 do not pertain to Cook County**

**Defendants and are therefore denied.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate

of Areon Marion, Deceased, demands judgment against the Defendants Sheriff and Officer

Vargas, in an amount in excess of Fifty Thousand Dollars ($50,000.00), and any relief this

Court deems proper and just.

**ANSWER: The allegations in this paragraph do not pertain to Cook County Defendants and are therefore denied.**

## COUNT XIII
## INDEMNIFICATION CLAIM – COOK COUNTY

181.    Plaintiff reasserts and realleges the allegations contained in paragraphs 1 through 180 as fully set forth herein in paragraph 181 of Count XIII.

**ANSWER: Cook County Defendants reassert their responses to Paragraphs 1 through 180 as if fully set forth herein in Paragraph 181.**

182.    Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/5-1106, and 55 ILCS 5/3-6016, Cook County is empowered and directed to pay any judgment for compensatory damages and any associated attorneys' fees and costs for which Cook County, the Sheriff, and/or their agents or employees, acting within the scope of his or her employment, are found liable.

**ANSWER: Paragraph 182 states a legal conclusion to which no response is required. To the extent a response is required Cook County Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 182.**

183.    The acts and/or omissions of all Defendants were committed within the scope of their employment.

**ANSWER: Cook County Defendants deny the allegations in Paragraph 183.**

184.    If a judgment for compensatory damages and attorneys' fees and costs is entered against any Defendant, Cook County must pay the judgment as well as the associate attorneys' fees and costs.

**ANSWER: Paragraph 184 states a legal conclusion to which no response is required. To the extent a response is required Cook County Defendants lack knowledge or information to form a belief about the truth of the allegations in Paragraph 184.**

WHEREFORE, Plaintiff, Joanna Wilson, as Independent Administrator of the Estate of Areon Marion, Deceased, demands judgment against the Defendant Cook County for indemnification of any judgment for compensatory damages and any associated attorneys' fees and costs and any relief this Court deems proper and just.

**ANSWER: Cook County Defendants deny Plaintiff is entitled to relief.**

## AFFIRMATIVE AND OTHER DEFENSES

1.	Defendants' conduct was at all times objectively reasonable and did not violate any clearly established constitutional rights. Accordingly, Defendants are entitled to the defense of qualified immunity.

2.	Defendants are immune from liability or entitled to limited recovery from Plaintiff's state law claims under the doctrine of comparative negligence, contributory negligence and willful and wanton conduct. *See* 735 ILCS 5/2-613(d) and 735 ILCS 5/2-1116.

3.	If Plaintiff should obtain any judgment for damages against Defendants in this action, said judgment for damages will be barred and set aside because decedent was guilty of comparative fault, negligence and/or willful and wanton conduct in excess of 50% which proximately caused their own injuries.

4.	That in the alternative, if judgment for damages is rendered in the cause herein in favor of Plaintiff and against Defendants, then Defendants are entitled to a reduction of those damages in the amount that such damage was caused or contributed to be caused by Decedent's own acts or omissions, including negligence, intentional conduct and/or willful and wanton conduct.

5.	That Decedent's acts or omissions are fault that contributed to over 50% of the proximate cause of the incident or decedent's own injuries or, in the alternative,

Defendants are entitled to a reduction of any damages recovered by Plaintiff to the extent of Decedent's own contributory fault including negligent, intentional, and/or willful and wanton conduct.

6.      To the extent Plaintiff seeks punitive damages from Cook County, it asserts immunity from same. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

7.      At all times relevant, Cook County was a local public entity as defined by the Local Governmental and Governmental Employees' Tort Immunity Act, hereinafter the Tort Immunity Act, 745 ILCS 10/1-101, *et seq.* and as such can avail itself of any and all immunities and defenses provided therein.

8.      Defendants are immune from liability regarding Plaintiff's state law claims made under Illinois law pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*

9.      Plaintiff's Complaint fails to state a plausible claim upon which relief may be granted.

### **JURY DEMAND**

Defendants hereby demand a jury trial on all the issues so triable pursuant to Fed. R. Civ. P. 38.

**WHEREFORE**, Defendant Cook County respectfully requests that this Honorable Court enter judgment in their favor and against Plaintiff, with costs, and for such further relief that this Court deems necessary.

Dated: April 4, 2023

                                        KIMBERLY M. FOXX
                                        State's Attorney of Cook County

By:     */s/ Mia Buntic*
        Mia Buntic
        Assistant State's Attorney
        Conflicts Counsel Unit
        50 West Washington St, Ste. 2760
        Chicago, Illinois 60602
        (312) 603-1434
        Mia.Buntic@cookcountyil.gov

        *Counsel for Defendant*
        *Cook County*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2023, I electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ <i>Mia Buntic</i></u>
Mia Buntic
