<div style="border: 1px solid black; padding: 10px;">
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1
</div>

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 21, 2025[*]
Decided March 24, 2025

**CERTIFIED COPY**
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

DORIS L. PRYOR, *Circuit Judge*

NANCY L. MALDONADO, *Circuit Judge*

No. 24-2264

| | |
|---|---|
| JOANNA WILSON, as independent administrator of the ESTATE OF AREON J. MARION,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>COOK COUNTY, ILLINOIS, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM, d/b/a CERMAK HEALTH SERVICES OF COOK COUNTY,<br>*Defendant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 22 CV 6886<br><br>Young B. Kim,<br>*Magistrate Judge*. |

---

[*] The defendant was served with process but is not participating in this appeal. We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

No. 24-2264 Page 2

Appeal of ADAIR JOYNER,
    *Objector-Appellant*.

**O R D E R**

Adair Joyner, the father of a detainee who died in jail, appeals a judgment approving the apportionment of proceeds from the wrongful-death settlement. We affirm.

Areon Marion committed suicide in 2021 while detained at the Cook County Jail in Chicago. The suicide occurred when the officer assigned to his cell left the post unattended.

Marion's mother, Joanna Wilson, filed this action on behalf of his estate, asserting constitutional and state-law tort claims against the county and the medical facility serving the jail. 42 U.S.C. § 1983; 740 ILCS 180/1. Wilson settled with the defendants in 2023. Soon thereafter she moved under the Illinois Wrongful Death Act, 740 ILCS 180/1, for approval of the distribution of damages. In the motion, she identified seven next of kin (herself, Joyner, and Marion's five siblings) but proposed that the funds be distributed only to herself and two of Marion's brothers. Joyner disagreed with Wilson's proposal and requested one-third of the funds.

Because Joyner and Wilson could not agree on the distribution of the settlement's proceeds, a magistrate judge, acting with the parties' consent, *see* 28 U.S.C. § 636(c), held a dependency hearing to determine fair compensation between the surviving beneficiaries, 740 ILCS 180/2(b). At the hearing, the court evaluated the relative dependencies of the parties, including their loss of society, based on the testimony of Wilson, Joyner, and several family members and friends. 740 ILCS 180/2(a), (b). Wilson testified about her close bond with Marion and the loss she suffered after his death, and the testimony revealed that she was the primary caretaker who financially supported him for most of his life. Joyner testified about his relationship with Marion during Marion's childhood, noting that their contact was distant at times, but that they spoke on the phone and sometimes had meals together when Marion visited.

After the hearing, the district court ordered the estate to distribute $2,000 of the settlement funds for the benefit of Marion's minor brother, $2,500 to Marion's older brother, the remaining 90% (or $791,007.50) to Wilson and 10% (or $87,889.72) to Joyner. The court estimated the extent of Wilson's loss of Marion's companionship to be at least 10 times greater than Joyner's.

No. 24-2264 Page 3

Joyner moved for a rehearing, asserting that the court erroneously ignored his testimony about his relationship with Marion and minimized the level of loss he experienced. The court denied the motion because Joyner's dissatisfaction with the result was not a reason for a new hearing.[1]

On appeal, Joyner asserts that the court erred by granting him only 10% of the settlement proceeds. He asserts that the court uncritically accepted Wilson's statements that he was absent from Marion's childhood, even after he testified that he kept in touch with Marion by phone and spent time with Marion when he and his siblings visited Chicago.

It was not clearly erroneous for the court to infer that Wilson was entitled to a higher share of the damages based on her relationship with Marion. The evidence shows that Marion lived with her during his childhood; that she paid for his schooling and extracurricular activities; and that they shared a special bond, speaking on the phone nearly every day. In contrast, Joyner did not live with Marion for most of Marion's childhood; responded to Marion's requests for help by sending money occasionally; and spoke to Marion by phone only periodically. Based on their relative dependencies, the court could reasonably infer that Wilson's loss of Marion's companionship was greater. *See, e.g., Epstein v. Davis*, 95 N.E.3d 1243, 1252–53 (Ill. App. Ct. 2017); 740 ILCS 180/2(a), (b). In any event, when there are two permissible views of the evidence, the court's choice between them cannot be clear error. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021); *In re Dimas*, 14 F.4th 634, 640 (7th Cir. 2021).

AFFIRMED

---

[1] Although the district court never entered a separate judgment as required by Rule 58 of the Federal Rules of Civil Procedure, we understand the court's order to be final. The court unambiguously signaled its intent to be finished with this case when it denied Joyner's motion for a rehearing and informed him of his right to appeal the court's decision by August 12, 2024. *See Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128 (7th Cir. 2022).